NO. 07-07-0266-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 27, 2007


______________________________



JAIME TREVINO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 379TH DISTRICT COURT OF BEXAR COUNTY;



NO. 2004CR6365; HONORABLE BERT RICHARDSON, JUDGE


_______________________________




Before CAMPBELL and HANCOCK and PIRTLE, JJ.

ON ABATEMENT AND REMAND


 Appellant Jaime Trevino, appeals his conviction for evading detention in a vehicle,
enhanced. After examining the record and the trial court's certification of appellant's right
to appeal, we abate the appeal and remand the case for further proceedings. See Tex.
R. App. P. 25.2(a)(2); 37.1; 34.5(c)(2); Dears v. State, 154 S.W.3d 610, 614-15
(Tex.Crim.App. 2005).

 On September 29, 2004, the trial court convened a hearing in appellant's case. As
part of a written plea bargain agreement for a probated sentence or deferred adjudication,
appellant signed an evidentiary stipulation judicially admitting the offense of evading
detention in a vehicle, enhanced by prior violations and entered a guilty plea in open court. 
 Based upon the plea and the stipulation, the court concluded the evidence was sufficient
to establish guilt but refrained from finding appellant guilty, pending sentencing. 
Sentencing was postponed for an unspecified period.

 One page of the agreement was a pre-printed checklist that in part provided:

 If the court grants deferred adjudication, the State does not recommend
any term of years as part of the plea agreement. All parties agree that
if deferred adjudication is subsequently revoked, Defendant may be
sentenced to any term of years within the range of punishment
provided by law for this offense.


(highlighting in original). This page further recited that the parties agreed upon punishment
of "5 years" with the State recommending community supervision. 

 A typewritten addendum more specifically expressed the parties' bargain. Here, the
State recommended five years confinement, probated for eight years. Significant to the
present discussion, it included language conditioning disposition in the case upon
appellant's promise to testify against other parties in other prosecutions. The agreement
left determination of appellant's performance of this obligation exclusively to the State's
discretion (the State is "the sole arbiter of [appellant's] good faith in the fulfillment of this
agreement"). The agreement further provided that should the State find appellant's
performance insufficient, and so notify the trial court, then "the agreement as to disposition
in this case will be voided and withdrawn," and "the said Jaime Trevino will be subject to
the full range of punishment for the offense of Evading Detention with a Vehicle-Enhanced." The parties also requested the court defer sentencing until appellant had an
opportunity to perform. 

 Some 32 months later, on May 27, 2007, the trial court convened a hearing,
apparently precipitated by appellant's conduct following the September 29, 2004, hearing. 
Specifically, on an unspecified date, in another criminal proceeding, the court found
appellant guilty of aggravated robbery and sentenced him to twenty years' confinement. 
At the May 27, 2007, hearing the State argued this fact, and other crimes appellant
allegedly committed subsequent to September 29, 2004, rendered him an unsatisfactory
witness for the testimonial role contemplated by the parties' plea agreement. 

 In remarks at the hearing, the trial court agreed that appellant violated the plea
agreement, and expressed the conclusion it would not follow the agreement's terms. The
court found appellant guilty of the evading arrest with a motor vehicle enhanced charge,
and imposed a sentence including ten years' confinement. 

 From the record before us, it is not clear whether the court declared the plea
agreement void, chose not to follow its terms, or concluded the agreement, on breach by
appellant, empowered its disposition of a more onerous sentence than recommended. 
When defense counsel inquired of the court's intention to follow or reject the agreement,
the judge referenced language at page two, paragraph two, of the agreement (1) and
responded, "I'm still within the parameters of the plea bargain" in sentencing appellant to
ten years' confinement. 

 The court ended the hearing with admonitions to appellant that he had:

 30 days to file notice of appeal, motion for new trial. Permission to appeal. 
I suppose the interpretation of the plea agreement could be under review by
the Fourth Court if that was appealed. That would be up to them. I'm not
sure how we would-I don't know if it's a pretrial motion or it's just
something-you can discuss that with your client . . . .


However, the court then certified appellant had no right of appeal because the case was
a plea-bargained case. 

 This Court noted the certificate of appeal and invited the parties to respond before
considering its jurisdiction. Appellant responded with a request for abatement and remand
for findings of fact and conclusions of law concerning appellant's appellate right. On our
request for a response, the State responded that it does not oppose abatement for findings
of fact and conclusions of law as requested by appellant.

 A trial court is required to enter a certification of a defendant's right of appeal in
every case that it enters a judgment of guilt or other appealable order. See Tex. R. App.
P. 25.2(a)(2). Rule 25.2(a)(2) limits an appellate court's jurisdiction over appeals from
plea-bargained convictions. However, these limitations do not apply to convictions from
open pleas of guilty. See Dears, 154 S.W.3d at 613. 

 A defendant in a noncapital case may waive any rights secured him by law. See
Tex. Code Crim. Proc. Ann. art. 1.14(a) (Vernon Supp. 2004). However, in the absence
of a plea agreement regarding sentencing, a pre-sentence waiver of the right to appeal is
unenforceable. See Smith v. State, 91 S.W.3d 407, 408-09 (Tex.App.-Texarkana 2002,
no pet.) (citing Ex parte Thomas, 545 S.W.2d 469, 470 (Tex.Crim.App. 1977)).

 Since the appellate record has been filed, we are obligated to review the record to
determine whether the trial court's certification of appellant's right of appeal is defective
and, if so, to obtain another certification from the trial court. See Dears, 154 S.W.3d at
614-15; Tex. R. App. P. 34.5(c); 37.1. A defective certification includes a certification that
is correct in form, but, when compared with the record before the court, proves to be
inaccurate. Dears, 154 S.W.3d at 614.

 Because of the ambiguity of the record and certification, we cannot determine
whether the trial court's certification of appellant's right to appeal is accurate, and thus
cannot determine our jurisdiction over the appeal. Accordingly, we abate and remand this
case to the trial court for re-certification of appellant's right of appeal. See Tex. R. App. P.
34.5(c), 44.3, 44.4; Dears, 154 S.W.3d at 614.

 On remand, the trial court shall immediately issue notice of a hearing and
accordingly conduct a hearing addressing the following issues: 

 1. Whether the court did or did not follow the plea agreement in sentencing
appellant.


 2. Whether the court determined the plea agreement as to disposition 
"voided and withdrawn" before sentencing appellant. 


 3. Whether appellant has the trial court's permission to appeal.


 4. Whether appellant waived his right to appeal subsequent to sentencing. 


 5. Any other facts upon which the court relied in certifying the case non- 
appealable.


 6. The facts upon which the court relies in re-certifying the case, as directed
below.


 The trial court shall cause this hearing to be transcribed. It shall make findings of
fact and conclusions of law, and issue any orders necessary for resolution of the listed
issues. 

 We further direct that, after conducting the hearing, the trial court re-certify whether
appellant has the right of appeal. The trial court's findings of fact and conclusions of law,
the re-certification, and any orders it enters shall be included in a supplemental clerk's
record. The transcript of the hearing shall be included in a supplemental reporter's record.
The trial court is directed to cause the supplemental clerk's and reporter's records to be
filed with the Clerk of this Court on or before Friday, November 9, 2007. Should the trial
court require more time to comply with the directions of this Court, it shall request an
extension prior to November 9, 2007.

 It is so ordered.


 Per Curiam 


Do not publish.
1. Page two, paragraph two of the typewritten addendum of the agreement provides
in its entirety:


 Should Jaime Trevino fail to fulfill his obligations under this Agreement, as
determined by the State, the State will inform the Court of such failure, the
agreement as to disposition in this case will be voided and withdrawn, and
the said Jaime Trevino will be subject to the full range of punishment for the
offense of Evading Detention with a Vehicle-Enhanced. Additionally, should
Jaime Trevino fail to appear to testify when requested by the State or fail to
appear for sentencing in this cause, the agreement as to disposition in this
case will be voided and withdrawn, and the said Jaime Trevino will be subject
to the full range of punishment for the offense of Evading Detention with a
Vehicle-Enhanced.



supplies the necessary culpable mental state for the act of
murder, the Court of Criminal Appeals believed that the application of the felony murder
rule to those facts was an "attempt to split into unrelated parts an indivisible transaction." 
Id. at 546. This reasoning, however, does not apply in the context of a capital murder
predicated upon the commission of a burglary because the State is not creating an offense
not authorized or contemplated by the Legislature. Furthermore, unlike Garrett, in the
capital murder scheme, the intent to cause the death of the individual is wholly
independent of the intent to commit the aggravating offense. The murder and burglary are
clearly divisible transactions, each with its own requisite mens rea. While the mens rea of
the two offenses may overlap, this capital murder scheme does not require a transference
of intent from the burglary offense to the murder. Therefore, we find the merger of intent
doctrine of Garrett to be inapplicable to the prosecution of capital murder under §
19.03(a)(2).

 Assuming that the legal sufficiency of the evidence was at issue, for purposes of
appellate review, this Court must give deference to "the responsibility of the fact finder to
fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts." Jackson v. Virginia, 443 U. S. 307, 318-19
(1979). See also Hooper v. State, 214 S.W.3d 9 (Tex.Crim.App. 2007). When assessing
the legal sufficiency of the evidence to support a criminal conviction, the appellate court
must consider all the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences to be drawn therefrom, a
rational juror could have found the essential elements of the crime beyond a reasonable
doubt. Jackson, 443 U.S. at 318-19; Hooper, 214 S.W.3d at 13. Each fact need not point
directly and independently to the guilt of the accused, so long as the cumulative force of
all the evidence is sufficient to support the conviction. Circumstantial evidence alone is
sufficient to establish the guilt of the accused, and the standard of review as to the
sufficiency of the evidence is the same for both direct and circumstantial evidence cases. 
 Hooper, 214 S.W.3d at 13. 

 In a legal sufficiency of the evidence review, the essential elements of the offense
are those of a hypothetically correct jury charge for the offense in question (i.e., one that
accurately sets out the law and adequately describes the offense for which the appellant
was tried without increasing the state's burden of proof or restricting the state's theory of
criminal responsibility). Id. at 14. Therefore, it is important to note that where the
indictment and the trial court's charge authorize the jury to convict on more than one legal
theory, as they did in this case, the verdict of guilt will be upheld if the evidence is sufficient
on any of the theories possible. Id. 

 Applying this analysis to the facts of this case, we must determine whether a rational
juror could have found that Appellant intentionally caused the death of Vince Simnacher
while in the course of committing a burglary of the Simnacher residence. Here, the State's
theory of prosecution would have allowed for a conviction if the jury had found that
Appellant entered the Simnacher residence with the intent to (1) cause bodily injury, (2)
threaten to cause imminent bodily injury, or (3) make offensive physical contact with Vince
Simnacher, Rhonda Kitchens, or any other party guest in attendance. Therefore, in
reviewing the sufficiency of the evidence we must consider each possibility.

 It is undisputed that Appellant entered the Simnacher residence without the
effective consent of the owner, and thereafter caused the death of Vince Simnacher. What
Appellant disputes is whether the evidence is legally sufficient to establish that he entered
the residence with the intent to (1) cause bodily injury, (2) threaten to cause imminent
bodily injury, or (3) make offensive physical contact with Vince Simnacher, Rhonda
Kitchens, or any other party guest in attendance. In that regard, the evidence shows that
Appellant was upset about his divorce from Rhonda and her involvement with Vince, that
he was aware that both Rhonda and Vince were at the Simnacher residence, and that he
was angry about there being a party to "celebrate" the anniversary of their divorce. The
testimony of Teresa Raylene Ott indicates that Appellant had previously threatened to kill
Vince Simnacher. She further testified that on the night of the shooting, she had spoke
with Appellant by telephone and quoted him as saying, "I ought to come over there and kill
every mother fucking one of y'all." Another person present at the time of the shooting,
William Welch, also quoted Appellant as saying, "You son (sic) of bitches didn't think I
would do it," as he began to shoot. Even if the State were required to establish that the
intended victim of the assault was someone other than Vince Simnacher, the evidence was
legally sufficient to support the jury's verdict. Appellant's third issue is overruled.

Conclusion


 Accordingly, having overruled Appellant's three issues, we affirm the trial court's
judgment.


 Patrick A. Pirtle 

 Justice


Publish.