Affirmed and Memorandum Opinion
filed June 2, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00849-CR



Leodegario
Rueda, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 209th District Court

Harris County, Texas

Trial Court
Cause No. 1230952



 

MEMORANDUM OPINION 

            A
jury found appellant Leodegario Rueda guilty of the felony offense of
aggravated robbery, and the trial judge sentenced him to eleven years’
confinement in the Texas Department of Criminal Justice, Institutional
Division.  In one issue, Rueda contends the evidence is insufficient to
establish beyond a reasonable doubt that he knew that his co-defendant was
going to use or exhibit, or did use or exhibit, a firearm during the commission
of the offense, and there is no evidence that Rueda himself used or exhibited a
firearm during the commission of the offense.  We affirm.

I

            Two
men approached Christina Alvarez as she began backing her Jeep Grand Cherokee
out of her apartment complex parking spot.  She noticed a tan sport utility
vehicle with dark-tinted windows parked behind her, blocking her path.  One man
approached her on the driver’s side and the other came to her passenger’s side
door.  Shortly after the crime, and later at trial, she identified the man
approaching on the driver’s side as Ramon Penaloza, Rueda’s co-defendant. 
Penaloza tried to open the door, and when he failed, he motioned for her to
roll down her window.  After Alvarez rolled down the window slightly, Penaloza
ordered her to unlock the door.  When she complied, he opened the door and
ordered her into the backseat.  He spoke to her through the open door while the
man from the passenger side sat beside her.

            Penaloza
demanded to know “where the money was at.”  Alvarez denied knowing of any
money, and he called her a liar.  He questioned her about her job, her husband,
and her husband’s place of employment, as well as the time she expected her
husband to return home.  Penaloza believed that she or her husband dealt drugs
and had a large amount of cash.  He demanded to know in which apartment she
lived, and he took her keys to the apartment.  Alvarez felt threatened and
feared she would be killed.

            Penaloza
ordered Alvarez out of the Jeep, telling her he and Rueda were moving her to
another vehicle.  He held her elbow while walking her to a tan SUV.  She
attempted to memorize the license plate as she walked toward the vehicle.  She
thought the plate number was 49H-NR8.  As she got into the SUV, she noticed
Penaloza had a black gun in his pocket area and he may have held the gun as he
demanded money.  When she first saw the gun, Alvarez feared the robbers planned
to kill her if they did not find the money they were looking for.

            Penaloza
had Alvarez enter the SUV from the passenger’s side and get into the backseat. 
As she got in she noticed Rueda sitting in the driver’s seat, and she
identified him later that day and in court as the SUV’s driver.  Rueda drove
the car to a parking spot, got out, took her keys, and went to her apartment to
find the money he and Rueda believed she possessed.  During this time, Alvarez
was kneeling on the floor of the SUV, where she saw a pair of orange shoes. 
Penaloza remained with Alvarez while Rueda ransacked her apartment.  

            About
twenty minutes later, Rueda returned to the driver’s seat, but not until after
Alvarez heard a loud noise as though someone was putting a television or stereo
into the SUV.  One of the men told Alvarez they were taking her somewhere, and
Rueda drove out of the complex while she remained in the backseat.  For about
ten to fifteen minutes, Rueda drove the SUV while the men spoke with each other
about what to do with her and determined that she was “the wrong girl.”  When
they stopped, Penaloza told Alvarez to extend her hand, take her keys, open the
door, and run straight ahead until she found her Jeep a short distance away. 
Penaloza also told her “not to look back or to look at the vehicle or [he was]
going to shoot [her] from the back with the gun.”  Alvarez ran to her Jeep,
which had been parked about an eighth of a mile away.  

            Because
the men had taken her purse with her cell phone, Alvarez drove around for a
short time until she stopped at a local business to use a telephone.  She
called police and gave them the license-plate information she had memorized,
along with a description of the SUV.  A short time later, a patrol officer saw
a tan SUV with the license plate 48HHR9.  Because it was so similar to the
description of the robbers’ SUV, the officer conducted a traffic stop.  The
officer ultimately brought the vehicle and its occupants to the crime scene a
short distance away.

            Alvarez
identified Rueda as the driver and Penaloza as the man with the gun.  Police
recovered the orange shoes from the tan SUV Rueda was driving.  Police also recovered
two guns from the SUV hidden underneath the center console; both were loaded. 
Alvarez identified one of the guns that day and again at trial as the one with
which Penaloza threatened her.  Police also found property belonging to Alvarez
and her husband, including a television, digital camera, and jacket, in the
back of the SUV.  

            In
Rueda’s defense, a woman with whom Rueda was living at the time testified that
he was at home with her until 4:00 p.m. on the date of his arrest, whereas
Alvarez had testified the robbery began around 3:25 p.m.

II

A

            In
a legal-sufficiency review, we examine all of the evidence in the light most
favorable to the verdict to determine whether a rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979).  This standard of review applies to
cases involving both direct and circumstantial evidence.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Although we consider everything
presented at trial, we do not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is the exclusive province of the jury to reconcile
conflicts in the evidence.  Mosley v. State, 983 S.W.2d 249, 254 (Tex.
Crim. App. 1998).    

            A
person commits the offense of robbery if, in the course of committing theft and
with intent to obtain or maintain control of the property, he (1)
intentionally, knowingly, or recklessly causes bodily
injury to another, or (2) intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death.  Tex. Penal Code § 29.02(a)(2).
 A robbery is aggravated if the person uses or exhibits a deadly weapon in the
course of committing the robbery.  Id. § 29.03(a)(2).


            In
this case, the jury was authorized to convict appellant either as a principal
or a party to the offense of aggravated robbery.  A person may be found guilty as a party to an
offense if he is criminally responsible for the conduct of the person who
committed the offense.  Tex. Penal Code § 7.01(a).
 A person is criminally responsible for the offense committed by another's
conduct if, acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Id. § 7.02(a)(2).  To convict appellant
as a party to aggravated robbery, the State had to prove he was criminally
responsible for the aggravating element.  See Stephens v. State, 717 S.W.2d 338, 340 (Tex. Crim. App.1986)
(in order to convict defendant as party to aggravated offense, State must prove
defendant was criminally responsible for aggravating element).  Evidence that the
appellant knew a deadly weapon would be used or exhibited in the commission of
the offense is sufficient to support a deadly weapon finding.  See Johnson v. State, 6 S.W.3d 709, 713 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d).  

            Under
the law of parties, the evidence supports the conviction
when the person “is physically present at the commission of the offense and
encourages its commission by words or other agreement.”  Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)
(op. on reh’g).  To determine whether the defendant was a party,
we may examine the events occurring before, during, and after the commission of
the offense, and we may rely on the actions of the defendant that show an
understanding of a common design to commit the offense.  King v. State,
29 S.W.3d 556, 564 (Tex. Crim. App. 2000).  

B

            Rueda
claims in his sole issue that the evidence was insufficient to prove he knew
Penaloza used or exhibited a gun when robbing Alvarez.  He contends there is no
evidence he saw the firearm or otherwise knew about it.  He claims Alvarez
testified she did not see Penaloza with a gun until she was in the backseat of
the SUV, and Penaloza did not brandish the firearm outside the vehicle’s
backseat.  Rueda claims there is simply no evidence that he knew the gun was in
the vehicle or that he aided or encouraged Penaloza to threaten Alvarez with
the gun.  According to Rueda, it is apparent from Alvarez’s testimony that the
gun was “barely visible” to her.

            Viewing
Rueda’s actions in a light most favorable to the verdict, we conclude the
evidence is sufficient to prove Rueda knew Penaloza used or exhibited a gun
when robbing Alvarez.  The evidence establishes not only that Rueda
participated as the driver throughout the offense, but also that he left the
vehicle with Alvarez’s apartment key and returned a short time later after
placing her property into the back of the SUV.  Rueda sat in the driver’s seat
as Penaloza ordered Alvarez into the backseat while holding a gun which she
believed he then placed against her back.  Rueda then drove Penaloza and
Alvarez, clearly being held captive in the backseat after Penaloza forced her
to keel on the floor with her head down, to an unknown location where Penaloza
ordered her from the vehicle, but not before threatening to shoot her in the back
if she turned around.  Further, when police discovered Rueda driving the SUV in
the vicinity a short time later, they found not one, but two loaded guns
beneath the center console, one of which Alvarez identified as the gun used by
Penaloza.  

            The
jury may make reasonable inferences from the evidence.  Hooper v. State,
214 S.W.3d 9, 15 (Tex. Crim. App. 2007).  The Hooper court defined an
inference as “a conclusion reached by considering other facts and deducing a
logical consequence from them.”  Id. at 16.  Here, the jury could have
reasonably inferred that Rueda knew Penaloza was going to use or exhibit, or
did use or exhibit, a firearm during the robbery because, as the driver of the
SUV, he knew that Penaloza was holding Alvarez captive in the backseat, he was
a willing participant before, during, and after the premeditated robbery, the
guns were within his reach in the center console of the SUV when he was
arrested, and he heard Penaloza threaten to kill Alvarez by shooting her in the
back.  Thus, contrary to Rueda’s suggestion, sufficient evidence existed from
which the jury could reasonably infer that Rueda knew about the presence and
use of a gun during the robbery, and that he aided Penaloza to commit the
crime.  See Johnson, 6 S.W.3d at 713 (holding evidence was sufficient to
warrant inference that appellant was aware of use of weapon in planned
robberies when appellant scouted robbery locations, acted as driver, and worked
with another man who had a gun strapped to his chest that matched the
description of the firearm used in the robberies).  

            Moreover,
like in Johnson, the evidence in this case “reveals a thoroughly[ ]
planned robbery scheme in which [Rueda] played important roles.”  Id. 
The appellant in Johnson was responsible for scouting stores to rob and
driving the getaway car afterward.  Id.  In this case, Rueda was responsible
for both driving and for fetching from Alvarez’s apartment “the money” that he
and Penaloza believed she had.  “This evidence warrants the inference that
[both participants] were aware of the details of the well-planned robber[y],
including the weapon used.”  Id.  (The fact that the robbers indentified
“the wrong girl” does not mean the robbery was not “well-planned,” just
imperfectly executed.)  After reviewing this evidence in the light most
favorable to the verdict, “we conclude it shows [Rueda] was aware that a deadly
weapon was used” to commit the robbery.  Id.

*
* *

            We
therefore overrule Rueda’s issue and affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Brown,
and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).