02-11-289-CR














 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00289-CR

 

 


 
 
 Willie Mornel Thomas
  
  
  
 v.
  
  
  
 The State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 297th District Court
  
 of
 Tarrant County (1234864R)
  
 November
 8, 2012
  
 Per Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

          This court has considered the record
on appeal in this case and holds that there was no error in the trial court’s
judgment.  It is ordered that the
judgment of the trial court is affirmed. 

 

SECOND DISTRICT
COURT OF APPEALS 

 

 

 

PER CURIAM

 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-11-00289-CR

 

 


 
 
 Willie Mornel Thomas
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE
297th District Court OF Tarrant
COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Willie
Walker, the manager of the New Start club in Fort Worth, was shot and killed at
the club after closing time in January 2009.  Appellant Willie Mornel Thomas was convicted
of capital murder in connection with Walker’s death.  In a single point, Thomas asserts that the
evidence is insufficient to support his conviction.  We will affirm.

Kenneth
Holleman testified that he, Walker, Deborah “Dell” Brown, and Ashley Odom were working
at the club that night.  Holleman said
that he held the back door open for Odom as she left and that, as he turned back
around to resume cleaning up, someone came up behind him and hit him in the
back of the head, possibly with the butt of a pistol.  That person made Holleman lie down on the
floor.  Holleman heard two men ask where
the money was. Holleman said that Walker took one of the men into the kitchen—where
Walker kept the money—and that Holleman then heard a struggle and three to four
gunshots coming from the kitchen.  Holleman
thought he heard someone say, “I got the money, let’s go.”  When Holleman got up, he saw Walker lying on
the floor, having difficulty breathing.  

Brown
testified that she was behind the counter counting money after the club closed
when a man walked up to Walker, grabbed him by the shirt, and demanded money.  Brown could not see the man’s face, but she
recalled at trial that he was loud and aggressive, was holding a black gun, and
was wearing a black shirt and black pants. 
The man walked with Walker to where he kept the money in the kitchen, and
then Brown heard shooting.  Brown tried
to run to the door to leave but a second man who was standing over Holleman
told her not to move. Brown did not look at the second man, but he asked her
where the money was; she told him it was by the cash register.  The man grabbed the money, went to the
kitchen, and told the other man, “Come on, man. 
Come on, man.  I got the
money.  Let’s go, let’s go.”  Brown heard a second gunshot and heard the
men run out the back door.  She called
911.  

Brown
testified that Odom’s boyfriend Deray Morgan was at the club after closing
helping Odom clean up, even though Walker had barred him from the club.  Brown said that the man who took Walker into
the kitchen was not Morgan, but she did not know if he was the second man. Brown
said she was scared of Morgan and that she tried not to look at the men.  

Morgan,
who was also charged with capital murder as a result of Walker’s murder, testified
at Thomas’s trial.  Morgan said that he
was dating Odom at the time of Walker’s murder and admitted that he, Odom,
Thomas, and several other individuals planned to kidnap and rob the bar’s
owner, Sammie Kindles, who owns several other businesses.  Morgan explained that he, Thomas, Byron
“Fred” Roquemore, T Lee, and a woman named Keysha went to New Start that night
to wait for Kindles.  According to
Morgan, only T Lee had a gun with him. When Kindles never showed up at the
club, they started talking about how much money was in the club.  Morgan thought it would be better to wait and
rob Kindles, but against his wishes, Thomas, T Lee, and Odom decided to “rob the
club” that night after it closed.[2]  Odom told Thomas and T Lee to hide in a
storage closet in the bathroom until the club closed.  Morgan and Odom left the club and waited
outside with Keysha and Fred; a few minutes later, Thomas and T Lee came
outside.  According to Morgan, Thomas said
that he shot Walker after they struggled for the gun and that Thomas dropped
his gun in the club.

Odom
testified at Thomas’s trial and also explained the plans to kidnap Mr. Kindles.
 She said that Thomas told her that he
shot Walker because he tried to wrestle Thomas for the gun.  

Police
recovered a semiautomatic pistol from inside the club and determined that the bullets
used to kill Walker were fired from that pistol. Forensic DNA analysis
determined that Thomas could not be excluded as a contributor of DNA found on the
trigger of that pistol but that Morgan, Fred, and T Lee could be excluded as
contributors.[3]  

Patrick
Lawrence, a friend of Thomas’s and Fred’s, testified that one day while hanging
out with Thomas, T Lee, Fred, Morgan, and a few other guys, Morgan told them
about a potential robbery in Fort Worth.  Thomas later told Lawrence that he “had to do”
a person during a robbery, which according to Lawrence means to kill or shoot
someone.  Fred also told Lawrence that
Thomas shot someone and dropped the gun and that the other guys were upset
because Thomas was “going to get all of [them] in trouble.”  

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Isassi
v. State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing an
evidentiary sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the
factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9, 16–17
(Tex. Crim. App. 2007).  We must presume
that the factfinder resolved any conflicting inferences in favor of the verdict
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.

The
standard of review is the same for direct and circumstantial evidence cases;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.  Isassi, 330
S.W.3d at 638; Hooper, 214 S.W.3d at 13.

Here,
Thomas argues that the evidence is insufficient to show that he was the
shooter.  He asserts that because Odom
and Morgan were accomplice-witnesses, their testimony “must be questioned.”[4]  Thomas also argues that, although the DNA evidence
found on the gun linked him to the offense, “there was no evidence excluding
others f[ro]m handling the gun.  No
testimony ruled out the possibility that [Thomas] touched the gun on another
occasion, leaving the residue found on the gun.”

Under
the accomplice-witness rule, a conviction cannot be had upon the testimony of
an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.  Tex. Code Crim. Proc. Ann. art. 38.14.  When evaluating the sufficiency of
corroboration evidence under the accomplice-witness rule, other evidence must
link the accused in some way to the commission of the crime and show that “rational
jurors could conclude that this evidence sufficiently tended to connect [the
accused] to the offense.”  Simmons v.
State, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); see Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App.
2008) (explaining that the corroborating evidence need not prove the
defendant’s guilt beyond a reasonable doubt by itself).  

Here,
the DNA evidence from the gun and the non-accomplice-witness testimony of
Lawrence tended to connect Thomas to the offense and sufficiently corroborated Odom’s
and Morgan’s testimony.  See Tex. Code Crim. Proc. Ann. art.
38.14; Neal v. State, 256 S.W.3d 264,
275 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 1037 (2009).  And although there
was no evidence excluding others from handling the gun, as Thomas argues on
appeal, “[f]or the evidence to be sufficient, the State need not disprove all
reasonable alternative hypotheses that are inconsistent with the defendant’s
guilt.”  Wise v. State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); Wilson v. State, 7 S.W.3d 136, 141 (Tex.
Crim. App. 1999) (“We have rejected the reasonable hypothesis construct as a measure
of legal sufficiency.”).  Under the
applicable standard of review, viewing the evidence in the light most favorable
to the verdict, presuming that the jury resolved any conflicting inferences in
favor of the verdict, and deferring to that resolution, we hold that the
evidence­, as set forth in detail above, is sufficient to support Thomas’s
conviction for capital murder.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.  We overrule his sole point and affirm the
trial court’s judgment.

 

PER CURIAM

 

 

PANEL:  WALKER, DAUPHINOT, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  November 8, 2012











[1]See
Tex. R. App. P. 47.4.





[2]The
indictment alleged robbery of Walker as the underlying robbery offense.  See Tex.
Penal Code Ann. § 29.02 (West 2011).  





[3]According
to the forensic DNA analyst, thirteen different markers were examined on the
DNA mixture found on the trigger, and Thomas’s alleles were present in each of
the thirteen markers.  The analyst
explained that at least 99.8 percent of randomly tested individuals from the
three major population groups (Caucasian, African-American, and Southwestern
Hispanic) would be excluded from the DNA mixture obtained from the trigger
swab.  She further testified that 1 in
5,959 Caucasian individuals, 1 in 763 African-American individuals, and 1 in
7,289 Southwestern Hispanic individuals would be included as potential
contributors.  





[4]The
jury charge included an accomplice-witness instruction and instructed the jury
that Odom and Morgan were accomplices as a matter of law.  See
Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005).