

NUMBER 13-15-00548-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**AUSTIN SHILOH HARPER,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 2nd 25th District Court
### of Gonzales County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Hinojosa
Memorandum Opinion by Chief Justice Valdez**

A Gonzales County jury found appellant Austin Shiloh Harper guilty of theft by a public servant, a state-jail felony, for which Harper was convicted and received a three-year probated sentence. *See* TEX. PENAL CODE ANN. § 31.03(f)(1) (West, Westlaw through 2017 1st C.S.). By three issues, Harper contends that the evidence is legally insufficient to support his conviction. We affirm.

# I. Background

A Gonzales County grand jury indicted Harper for theft by a public servant. *See id.* The indictment specifically charged that on or about May 15, 2014, Harper:

> unlawfully appropriate[d] . . . property, to wit: U.S. Currency or money orders, of a value of $500 or more but less than $1,500 from the City of Waelder, the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property, and the defendant was . . . a public servant, namely, licensed peace officer, and such property appropriated by [Harper] had therefore come into his custody, possession, or control by virtue of his status as such public servant.

Harper pleaded not guilty to this charge, and the case was called for a jury trial. When the evidence is viewed in the light most favorable to the jury's verdict, it shows the following.

The City of Waelder (City) employed Harper as the chief of its police department. The City also employed Billy Bob Moore as the assistant police chief. The police department's budget came from the City. As such, the City paid for most of the police department's equipment by issuing purchase orders preapproved by the City's mayor and council members. However, as per City policy, the City did not supply handguns to police officers. Instead, handguns were to be supplied by police officers at their own expense.

In December 2013, the City received a donation in the form of two checks from a business called "Hometown Sweepstakes." According to the donor, the purpose of the donation was to help the police department buy equipment. However, the City's administrator became concerned about the legitimacy of the donor's business and rejected the donation on behalf of the City.

Approximately four months later, in May 2014, assistant chief Moore called the donor to solicit the same donation. According to the donor, assistant chief Moore asked

2

for the donation to be made in blank money orders. The donor said that the chief insisted on it. This arrangement sounded "too fishy" for the donor, so he contacted Texas Ranger Joseph Evans. With Ranger Evans surveilling the transfer, the donor met with assistant chief Moore in the parking lot of the police department and handed Moore two blank money orders, totaling $1,253. Assistant chief Moore then cashed the money orders and went to Harper's house, where the two agreed that the cash would be split equally among themselves and would be used to buy police equipment. Harper's half amounted to approximately $650.

The next day, Harper traveled to a gun store and purchased two hand guns—a Glock for $480.70 and a Smith & Wesson for $319.95—totaling $800.65. The City did not issue a purchase order for the handguns. Instead, the handguns were billed to Harper in his individual name, as shown on the purchase receipt issued by the gun store. To facilitate the purchase of the handguns in his own name, Harper filed paperwork with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Ranger Evans testified to the significance of Harper's decision to fill out ATF paperwork:

Ranger Evans: I believe it's [form] 4473. It's a Federal government document, and that particular document is for an individual purchasing a firearm. Anybody that goes in—me, you, or anybody else that goes in and buys a personal gun has to fill this form out, saying, "I'm buying this gun. I am not a convicted felon. I'm capable and eligible of purchasing this weapon, and this weapon is basically for me." He filled that particular paperwork out in his name; him as the buyer; him as the owner of the guns that he purchased that day.

Prosecutor: And if somebody were buying a department handgun, would they fill it out in their name and that they're the registered owner?

3

Ranger Evans:      No.  In fact, if—if you go in to purchase weapons for a department, or for a government entity, [the ATF] form is not used.  You actually have to bring in a letterhead saying, "we're purchasing these weapons for this department, and they're for department use," and that's how they're sold.  [The ATF] form is not completed by individuals buying for a government entity.

Ranger Evans interviewed Harper regarding the donation approximately one month after Harper purchased the handguns.  Harper initially told Ranger Evans that he could not remember whether the police department ever received a donation in the seven months since he became police chief.  However, when pressed further, Harper admitted that he used proceeds from the donation to purchase the handguns, which he considered to be "City property."[1]

The evidence showed that Harper never informed the City about the donation prior to purchasing the handguns; instead, Harper told the City about the purchase only after Ranger Evans interviewed him about the donation.

After hearing this evidence, the jury found Harper guilty of theft by a public servant as charged in the indictment.  This appeal followed.

## II.      Standard of Review

In conducting our legal sufficiency review, we must view "the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).  We "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences

---

[1] Harper stated that he had to use approximately $200 of his own money on top of the money from the donation to complete the purchase of the handguns.

4

from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19).

### III. The Essential Elements of Theft

A person commits the offense of theft if he "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(1). At the time of the offense in this case, theft was a state-jail felony if the value of the property appropriated was more than $500 but less than $1,500,[2] and the defendant was a public servant. *See Id.* § 31.03(e)(3); *see also id.* § 31.03(f)(1).[3]

### IV. Discussion

**A. Who "owns" the donation?**

By his first issue, Harper contends that the donation—i.e., the money orders and the proceeds thereof—was not "owned" by the City. The City is considered the "owner" of this property if, among other things, the City either (1) possessed the property, whether lawfully or unlawfully, or (2) had a greater right to possess the property than did Harper. *Id.* § 1.07(35)(A) (West, Westlaw through 2017 1st C.S.). "Possession" means actual care, custody, control, or management. *Id.* § 1.07(39).

1. *Did the City possess the property?*

Harper argues that the City did not own the property under the first mode of ownership listed above because the City did not actually possess the property; instead, according to Harper, it was assistant chief Moore who actually received the money orders

---

[2] We note that, in 2015, the Texas Legislature amended the statute to make theft a Class A misdemeanor if the value of the property appropriated is $750 or more but less than $2,500. Acts of June 20, 2003, 78th Leg. R.S., ch. 393 § 20, 2003 TEX. GEN. LAWS 1639, eff. Sept. 1, 2003 (amended 2015) (current version at TEX. PENAL CODE ANN. § 31.03(e)(3) (West, Westlaw through 2017 1st C.S.)).

[3] On appeal, Harper concedes that, as a peace officer, he was a public servant and that the amount of the property involved was between $500 and $1,500.

5

from the donor and cashed them.  Harper asserts that assistant chief Moore therefore owned the property.  However, the City is not a natural person and therefore must act through its agents and employees.  *See id.* § 1.07(38); *see also Flores v. State*, No. 01-90-00314-CR, 1990 WL 177280, at *2 (Tex. App.—Houston [1st Dist.] Nov. 15, 1990, no pet.) (mem. op., not designated for publication) (observing that "once appellant received fine money [paid by a traffic ticket defendant], it became the property of the City of Houston by virtue of [appellant's] employment [with the City of Houston]").  Assistant chief Moore was employed by the City when he solicited the donation on behalf of the police department, and the police department is a subdivision of the City.  Therefore, a jury could have rationally found that the City possessed the property through assistant chief Moore.  *See id.* § 1.07(35)(A).

2.  *Did the City have a greater right to possess the property than Harper?*

Harper next argues that the City did not own the property under the second mode of ownership listed above.  *See id.* § 1.07(35)(A) (defining owner as a person who has a greater right to possess property than the defendant).  Specifically, Harper asserts that the donation was essentially "up for grabs" after the City administrator rejected it, and therefore, the City could not claim a greater right to the donation than he did.

The premise of Harper's argument seems to be that the person who rejects property cannot claim a greater right to that property than the person who accepts the property.  We find no reason to disagree with this proposition.  However, when both individuals work for the same company, can the employee who accepts the property legitimately claim to have a possessory interest superior to that of *the company itself* simply because another employee initially rejected the property?  We believe that a jury

6

presented with that question could rationally find that, as between the employee who accepted the property and the company itself, the company's interest is superior. In this case, as in the scenario above, we believe the jury could have rationally found that the City's right to possess the donation was superior to that of Harper, Moore, and the administrator—all of whom were City employees. Furthermore, Harper provides no authority to support his position that the City's possessory interest in the donation should be deemed inferior to his interest under the circumstances, and we find none.

Harper further argues that, as between the City and the police department, we should find that the police department has the superior interest because the donation was intended for the police department. However, the issue is not whether the City's interest was superior to the police department's interest, but instead whether the City's interest was superior to Harper's. For the reason stated above, we have already resolved the latter issue against Harper. At any rate, as previously mentioned, the police department was a subdivision of the City, and Harper provides no authority that a subdivision of a municipality may be treated as a free-standing, separate entity for purposes of determining the ownership element of theft, and we find none.[4]

Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational jury to conclude that the City either possessed the property at issue

---

[4] Nevertheless, Harper argues that the police department had a greater right to possess the property than did the City because the police department allegedly had established a private account for receiving donations under the previous police chief, which the City had knowledge of and authorized. However, the separate account was never identified with any specificity. Furthermore, the witness who testified about the purported account identified Harper as her only source of knowledge that such account existed. Moreover, the witness testified that Harper said the account was closed when the previous chief left. Considering this evidence, the jury could have believed that such account never existed or that, if it ever existed, it was closed at the time of the events giving rise to this prosecution. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

through assistant chief Moore or had a greater right to possess the property than did Harper. We overrule Harper's first issue.

**B.      Did Harper "unlawfully" appropriate the donation?**

By his second issue, Harper disputes that he appropriated the donation unlawfully when he used it to purchase handguns. Harper unlawfully appropriated the property if, among other things, the City did not consent to Harper using the donation to purchase the handguns. *See id.* § 31.03(b)(1).

Here, the City required police officers to supply handguns at their own expense. Instead of using his own money, Harper used money donated to the police department to purchase handguns in his own name without telling anyone at the City about it beforehand. The jury could have rationally found from this evidence that Harper appropriated the donation without the City's consent.

Nevertheless, Harper argues that he did not need the City's consent to purchase the handguns because no City policy outlined how monies donated to the police department were to be used. However, Harper's evidence undermines this argument. Harper offered into evidence three receipts issued by the City. These receipts documented monies donated to the police department from businesses other than Hometown Sweepstakes. Harper then offered into evidence a City-issued receipt documenting the donation from Hometown Sweepstakes in December 2013, which the administrator rejected. The fact that the City documented these donations is evidence that Harper acted contrary to the City's policy when he concealed the donation from the City.

We overrule Harper's second issue.

8

**C.      Did Harper "intend to deprive" the City of the donation?**

By his third issue, Harper argues that he did not intend to deprive the City of the donation. Harper intended to deprive the City of the donation if, among other things, it was his conscious objective or desire to withhold it from the City permanently. *See id.* § 6.03(a) (West, Westlaw through 2017 1st C.S.); *see also id.* §§ 31.01(2)(A), 31.03(a).

Here, Harper paid for the handguns in cash and represented to ATF that they were his property, leaving no paper trace that the handguns were actually purchased with City money. Harper never informed anyone at the City about the donation or the purchase until Ranger Evans questioned him about it one month later. And during his interview with Ranger Evans, Harper initially disclaimed any knowledge of a donation, but he then admitted to purchasing handguns with the donation to the police department. Based on this evidence, the jury could have reasonably inferred that Harper had every intention of claiming ownership of the handguns for himself had Ranger Evans's police investigation not prompted him to come clean.

Nevertheless, Harper argues that assistant chief Moore acted alone in soliciting the blank money orders from the donor and that he knew nothing about the donation until after Moore cashed the money orders. As we understand his argument, Harper asserts that he lacked the intent to deprive the City of the donation because he did not actually solicit the donation. However, the donor testified that assistant chief Moore solicited the blank money orders at the behest of the police chief, which was Harper. The jury was entitled to believe the donor's testimony.

We overrule Harper's third issue.

## V.    Conclusion

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this
16th day of November, 2017.