EVERETT STALLINGS V. STATE.

No. 25,841. June 4, 1952.
State's Motion for Rehearing Denied (Without Written Opinion) December 10, 1952.

*Underwood, Wilson, Sutton, Heare & Boyce, R. A. Wilson* (of counsel), Amarillo, for appellant.

*F. H. Richards,* District Attorney, Dalhart, and *George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was convicted by a jury and assessed a penalty of $2,000.00 upon a complaint which alleges that he did, on November 1, 1951, cause a commercial motor vehicle to travel on the left-hand side of a public highway, being U. S. Highway No. 87 in Hartley County, at a time when the same was not clear and unobstructed for a distance of at least 50 yards; and that he did, by negligence and carelessness, cause the death of Helen Freeman, Chester Dye, Rogene Jones, and Bowdry Bloxom. It is further alleged that in so doing he caused the mo

tor vehicle driven by him to collide with an automobile driven by Chester Dye and that such collision killed the above-named parties.

An attack is made on the foregoing complaint because it is not sworn to before an officer authorized to administer oaths in Hartley County. The complaint was sworn to before a notary public in Dallam County. Reliance is had for this contention on Thomas v. State, 37 Tex. Cr. R. 142, 38 S.W. 1011. The complaint in the Thomas case was sworn to before the county attorney of Erath County, alleging the commission of an offense in Hood County. It was held to be bad on the theory that a county attorney, under the law, is authorized to swear a party to such complaint only when offenses are committed in the county of which he is the county attorney. The holding is very clear on this. A notary public has authority to administer oaths generally and to take acknowledgements to be used in any county. It is our holding that the complaint filed in the instant case complies with the law.

The important question now before us is the sufficiency of the evidence to sustain the jury verdict. There is very little, if any, difference as to material matters between the evidence introduced by the state and that by the defendant. It is without dispute that appellant was driving a large transport truck with an overall length of approximately 40 feet. It consisted of a truck-tractor motor car on which rested one end of an oil or gasoline tank trailer, the back end of which was supported by 8 wheels, 4 on each side. Its general appearance was of the common type familiar to all. He was driving in a southerly direction, from Dalhart toward Amarillo. The four deceased young people were in a passenger car going toward Dalhart. A collision occurred between 2:30 and 3:00 o'clock in the morning, resulting in the death of the four occupants of the passenger car and the injury of appellant, the driver, and only occupant of the transport motor vehicle.

No survivor witnessed the accident except the appellant. The state relies almost exclusively on the testimony of patrolmen who examined the demolished car and transport vehicle, together with the markings on the ground, immediately after the collision and on the following days. A number of pictures were introduced in the record. The markings on the ground are not clearly shown and reliance is had on the testimony of the witnesses as to what they found. The evidence of the defendant raises no question about the correctness of their statement.

We find conclusions made by the witnesses in only limited instances and these conclusions, like that of the jury, must be supported by the evidence in order to have sufficient probative force to sustain the judgment of conviction.

The accident occurred on what was estimated to be a thirty per cent curve. The road was veering to the right of the driver of the transport truck and to the left of the driver of the passenger car. This may or may not be important.

The parties are in agreement as to the point of contact as marked by a deep scarred place in the highway, which was located about one foot to appellánt's right of the center. This will hereafter be referred to as the west side of the center. There is no evidence to disclose the cause of this scarred place or what part of either car dug this hole into the pavement. Its importance is to fix the point of collision from the standpoint of north or south, not as to the center of the road. It is without dispute that the wheels of the trailer at the rear end began skidding on the road at approximately 40 feet north of the point of collision. We quote from state witness Roger Sosebee as follows: (S.F. p. 33) "In my examination of the scene, I found that the left hand tracks came back across the center stripe into the left hand lane of the highway and they were about four feet left of the center stripe. I could see those tracks back about eighty feet from the rear of the truck." This is also about 40 feet back of the point of collision. This skid mark continued to the point of contact, crossed over and was traceable to the wheels where they had stopped on the west side of the highway. There are no markings found to indicate skidding of the wheels of the trailer-tractor and there is no evidence to show whether or not the left wheels of the tractor were on the east side of the center mark. The evidence further shows the skid marks of the passenger car beginning 39 feet back of the collision and crossing over to the west side 28 feet south of the point of contact, so that the left wheels were on the west side of the center. There is no claim that the headon collision came while the cars were directly in front of each other. The impact was more to the left of each car. It is without dispute, therefore, that the passenger car was partly on the left-hand side and there is no evidence that the trailer-tractor was any distance across the center, as alleged. To the contrary, it is pretty well indicated from the condition that the trailer-tractor was not across the center. The skid marks fixed the position of the passenger car. It follows that the left wheels of the trailer-tractor were at

least on the center or to the west of it. There is no substantial basis for a contrary conclusion. It is argued that the driver of the passenger car must have seen appellant's car on the left hand side and attempted to cross over to the left of it to avoid an accident. This is presuming something against the appellant without a basis to sustain it. An unsupported presumption cannot be indulged against a defendant on trial.

There is some support in the state's case for the argument that appellant had been driving his truck for 31 hours. The only value that this evidence could have would be to create a presumption that he fell asleep. Again, such presumption cannot be indulged.

There is evidence, also, that the passenger car passed another transport truck at a terrific rate of speed some 14 miles south of the accident. This evidence has no probative force to support any issue in the case.

We have considered all of the facts and are unable to find evidence with sufficient probative value to sustain the conviction. The judgment of the trial court is reversed and the cause is remanded.