IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1352-05





REGINALD LAMONT HOOPER, Appellant



v.



THE STATE OF TEXAS 





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


ANGELINA COUNTY





 Meyers, J., delivered the opinion of the unanimous Court.



O P I N I O N 



 Appellant Reginald Hooper was convicted by a jury of aggravated assault of a
public servant and sentenced to 30 years' confinement in the Texas Department of
Criminal Justice-Correctional Institution Division. The State presented evidence at the
guilt phase of the trial that during March 2004 Appellant was the getaway driver from an
aggravated robbery and that a passenger in Appellant's vehicle, one of the robbers, shot at
a Parks and Wildlife game warden while trying to flee.

 Appellant appealed, asserting that the evidence was legally and factually
insufficient to support his conviction and that the trial court misdirected the jury about the
law regarding weapons findings and parole eligibility. Addressing only the legal
sufficiency claim, the court of appeals reversed the guilty verdict and rendered a
judgment of acquittal after finding the evidence legally insufficient to support Appellant's
conviction. The Chief Justice dissented. He argued that the verdict was not irrational
because any inferences necessary to support the conviction are reasonable and supported
by the record. (1)

 We granted review to determine whether the court of appeals erred in holding that
the evidence was legally insufficient to support Appellant's conviction. The State urges
two reasons for review: 

 1) [T]he Court of Appeals incorrectly applied the Jackson v. Virginia
standard of review in finding the jury verdict "irrational."


 2) [T]he justices of the Court of Appeals disagreed on a material
question of law necessary to the Court's decision, to wit: the
application of the Jackson v. Virginia standard of review for
legal sufficiency and the Court's reliance on "inference stacking"
to reach its decision.


 Because we find that the court of appeals applied the legal sufficiency test
incorrectly, we remand the case to the court of appeals to reconsider the legal sufficiency
of the evidence supporting Appellant's conviction. 

The Evidence

 On March 17, 2004, two men robbed the clerk at a Cash 2 U store in Woodville. 
The clerk did not see them pull up to the store in a car. The two men held the clerk at
gunpoint and demanded money. They then took her to the back of the store and tied her
hands and feet with duct tape. There was no money in the store, so the robbers took her
personal items. The clerk knew Appellant, and he was not one of the robbers. After the
robbers left, the clerk freed herself and ran to the front of the store just as a customer
came in. She told him she had just been robbed and asked if he had seen anyone coming
out of the store. He had not. Police quickly arrived and took a statement from the clerk. 

 Across the street, in a grocery store parking lot, another witness was almost hit by
a red, four-door Dodge speeding across the parking lot. A man ran by her car, jumped in
the red vehicle, and lay down in the back seat. The red vehicle then sped out of the
parking lot. The witness did not see the driver of the vehicle or the direction the vehicle
turned out of the parking lot. When the witness saw police at the Cash 2 U store, she
stopped to ask if there had been a robbery. She gave the police a description of the red
vehicle and of the man who she had seen jump in the car. That description was broadcast
to officers. 

 A game warden heading toward Woodville heard the broadcast and soon spotted a
small red vehicle heading out of town. As the warden turned around to follow it, the
vehicle seemed to accelerate. The warden was driving his Parks and Wildlife Department
patrol truck with the Parks Department logo and name on both doors and red and blue
lights on the front and rear of the truck. It took the warden a few minutes of driving over
100 m.p.h. to catch up. Wanting to get a better look, the warden followed the red vehicle
for another 4 or 5 minutes at 60 or 70 m.p.h. without activating his siren or lights. The
game warden could see only one occupant, the driver, in the vehicle. He radioed the
license plate to the dispatcher and learned that this was the type of vehicle the witness had
described. During this time, the vehicle slowed down and moved to the shoulder as if to
let him pass. The game warden had not activated his lights. The game warden stayed
behind the vehicle, and the vehicle continued to slow. The vehicle then pulled over and
quickly came to a complete stop. The game warden activated his emergency lights and
almost immediately the heads of two additional occupants became visible, one in the front
passenger seat and one in the backseat. As the game warden exited his truck, the front
seat passenger opened his car door and started exiting the red vehicle. The warden yelled
at him to get back in, but the passenger continued moving toward the front of the vehicle. 
At the same time, the back seat passenger exited the vehicle. As the game warden
reached for his radio and gun, the front seat passenger, who was about 25 feet away, fired
a shot at him, but missed. The game warden returned fire, and the passengers fled into
the woods. 

 Appellant, who was the driver of the vehicle, remained in the vehicle when the
others exited. But when the game warden returned fire at the front seat passenger,
Appellant opened the door and jumped onto the ground, yelling at the game warden not to
shoot or kill him. Appellant never tried to run, had no weapons on his person, followed
all the warden's instructions, and never gave any of the officers who later arrived any
trouble. The two suspects who had fled were eventually captured after a long manhunt. 
A pistol was recovered from the floorboard in the backseat of the vehicle where one of
the suspects had been hiding, and another pistol was found near where one of the suspects
surrendered. Tape matching that used in the robbery and the stolen keys from the Cash 2
U store were recovered in the woods. 

Legal Sufficiency of the Evidence

 In assessing the legal sufficiency of the evidence to support a criminal conviction,
we consider all the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences therefrom, a rational juror
could have found the essential elements of the crime beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex.
Crim. App. 2006); Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). The
reviewing court must give deference to "the responsibility of the trier of fact to fairly
resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts." Jackson, 443 U.S. at 318-19. In reviewing the
sufficiency of the evidence, we should look at "events occurring before, during and after
the commission of the offense and may rely on actions of the defendant which show an
understanding and common design to do the prohibited act." Cordova v. State, 698
S.W.2d 107, 111 (Tex. Crim. App. 1985). Each fact need not point directly and
independently to the guilt of the appellant, as long as the cumulative force of all the
incriminating circumstances is sufficient to support the conviction. See Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[i]t is not necessary that every fact point
directly and independently to the defendant's guilt; it is enough if the conclusion is
warranted by the combined and cumulative force of all the incriminating
circumstances."); Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); 
Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Circumstantial
evidence is as probative as direct evidence in establishing the guilt of an actor, and
circumstantial evidence alone can be sufficient to establish guilt. Guevara, 152 S.W.3d at
49. On appeal, the same standard of review is used for both circumstantial and direct
evidence cases. Id.

 Ordinarily, to sustain a conviction for aggravated assault of a public servant the
evidence must demonstrate that: 1) the person intentionally or knowingly threatened
another with imminent bodily injury, 2) the person used or exhibited a deadly weapon
during the commission of the assault, and 3) the offense was committed against a person
the actor knew was a public servant while the public servant was lawfully discharging an
official duty. Tex. Penal Code §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B). Additionally,
pursuant to Texas Penal Code sections 7.01 and 7.02, an individual can be convicted as a
party to an offense if that offense was committed by his own conduct, by the conduct of
another for which he is criminally responsible, or both. Tex. Penal Code § 7.01. A
person is criminally responsible for an offense committed by the conduct of another if,
acting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex.
Penal Code § 7.02(a)(2). Further, if in the attempt to carry out a conspiracy to commit
one felony another felony is committed by one of the conspirators, all conspirators are
guilty of the felony actually committed, though having no intent to commit it, if the
offense was committed in furtherance of the unlawful purpose and was one that should
have been anticipated as a result of carrying out the conspiracy. Tex. Penal Code §
7.02(b).

 To find Appellant guilty of aggravated assault, the jury must have found every
essential element of the offense charged beyond a reasonable doubt. In a sufficiency
review, the essential elements of the offense are those of a hypothetically correct jury
charge for the case; one that accurately sets out the law and adequately describes the
offense for which the defendant was tried without increasing the State's burden of proof
or restricting the State's theories of liability. Malik v. State, 953 S.W.2d 234 (Tex. Crim.
App. 1997). When the trial court's charge authorizes the jury to convict on more than one
theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient
on any of the theories. Guevara, 152 S.W.3d at 49 (citing Rabbani v. State, 847 S.W.2d
555, 558 (Tex. Crim. App. 1992)). To find Appellant guilty of aggravated assault of a
public servant, the jury must have determined beyond a reasonable doubt that either (2): 1)
Appellant intended to promote or assist in the aggravated assault of the warden, (3) or 2) the
aggravated assault was committed by one of the conspirators in furtherance of carrying
out the conspiracy to commit the aggravated robbery or another felony and that Appellant
should have anticipated that aggravated assault of a public servant could result from
carrying out the conspiracy. (4)

 The court of appeals, however, held that the evidence was insufficient because
"there was no direct evidence to establish Hooper's knowledge of [the shooter's] violent
propensity or of [either co-conspirator's] intent to evade arrest by shooting at [the game
warden]." The court further stated that, to reach the guilty verdict, the jury would have
had to infer that Appellant was the driver of the getaway vehicle and that he "knew or
was on notice-and thus should have anticipated" that his co-conspirator would shoot at a
public servant. We disagree with this reasoning. Knowledge of a co-conspirator's
violent propensity or intent to commit aggravated assault is not an element of the offense
under either theory of party liability, so the lack of evidence of such knowledge is not
dispositive of sufficiency. Also, direct evidence of the elements of the offense is not
required. Juries are permitted to make reasonable inferences from the evidence presented
at trial, and circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor. Circumstantial evidence alone can be sufficient to establish guilt. 
Guevara, 152 S.W.3d at 49. 

Inference Stacking 

 Based on the disagreement between the majority and dissent in the court of
appeals' opinions in this case, the State requested that we address the proper use, if any,
of the "stacking inference upon inference" test in criminal legal sufficiency review. We
will do so. 

 Some courts of appeals, in their criminal law opinions, have cited a rule that when
conducting a legal sufficiency review a vital fact may not be established by stacking
inference upon inference. E.g., Reedy v. State, No. 03-03-0399-CR, 2006 Tex. App.
LEXIS 10484 at *49 (Tex. App.-Austin, Dec. 8, 2006, pet. filed); Tippitt v. State, 41
S.W.3d 316, 327 (Tex. App.-Fort Worth, 2001, no pet.); Richardson v. State, 834 S.W.2d
535, 537 (Tex. App.-Houston [1st Dist.] 1992; pet. ref'd). However, inference stacking
has not been used in this Court's sufficiency of the evidence jurisprudence in over 50
years. In the distant past, this Court reversed numerous convictions because they were
based upon stacking inferences, unsupported presumptions, or building presumptions
upon presumptions. See, e.g., Stallings v. State, 158 Tex. Crim. 74, 77, 252 S.W.2d 939,
940 (1952); Williamson v. State, 156 Tex. Crim. 520, 522, 244 S.W.2d 202, 204 (1951);
Lee v. State, 152 Tex. Crim. 401, 405, 214 S.W.2d 619, 622 (1948). However, that
practice was discontinued and is not a part of our modern sufficiency review. We have
used the Jackson v. Virginia test for legal sufficiency review since it was enunciated by
the U.S. Supreme Court in 1979. Jackson, 443 U.S. 307. The only time that such
language appears in a recent opinion from this Court is in a recitation of the grounds for
review as stated by a party. See Guevara, 152 S.W.3d at 48. In that case, we overturned
the court of appeals' reversal for legal insufficiency and held that the jury verdict was
based on reasonable inferences from the evidence. Id. at 52. 

 The rule against inference stacking as used by the courts of appeals might have
evolved from their civil cases. See, e.g., Lozano v. Lozano, 983 S.W.2d 787, 789 (Tex.
App.-Houston [14th Dist.] 1998) ("[A] vital fact may not be established by stacking
inference upon inference. See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas
Corp., 435 S.W.2d 854, 858 (Tex. 1968); Engstrom v. First Nat. Bank, 936 S.W.2d 438,
445 (Tex. App.-Houston [14th Dist.] 1996, writ. denied)."). Since the courts of appeals
consider both civil and criminal cases, perhaps that is how the rule has made its way into
their criminal law opinions. Our appellate law, however, contains no such rule, and we
will not take this opportunity to import it into our criminal jurisprudence. 

 In the context of modern criminal law, a rule against inference stacking is
unnecessary. Under Jackson v. Virginia, courts of appeals assessing legal sufficiency are
to consider all the evidence in the light most favorable to the verdict and determine
whether, based on that evidence and reasonable inferences therefrom, a rational juror
could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson, 443 U.S. at 318-19; Powell, 194 S.W.3d at 506; Guevara, 152 S.W.3d at 49. 

 Under the Jackson test, we permit juries to draw multiple reasonable inferences as
long as each inference is supported by the evidence presented at trial. However, juries are
not permitted to come to conclusions based on mere speculation or factually unsupported
inferences or presumptions. To correctly apply the Jackson standard, it is vital that courts
of appeals understand the difference between a reasonable inference supported by the
evidence at trial, speculation, and a presumption. (5) A presumption is a legal inference that
a fact exists if the facts giving rise to the presumption are proven beyond a reasonable
doubt. See Tex. Penal Code § 2.05. For example, the Penal Code states that a person
who purchases or receives a used or secondhand motor vehicle is presumed to know on
receipt that the vehicle has been previously stolen, if certain basic facts are established
regarding his conduct after receiving the vehicle. Tex. Penal Code § 31.03(c)(7). A
jury may find that the element of the offense sought to be presumed exists, but it is not
bound to find so. Tex. Penal Code § 2.05. In contrast, an inference is a conclusion
reached by considering other facts and deducing a logical consequence from them. 
Speculation is mere theorizing or guessing about the possible meaning of facts and
evidence presented. A conclusion reached by speculation may not be completely
unreasonable, but it is not sufficiently based on facts or evidence to support a finding
beyond a reasonable doubt. 

 As stated above, juries are permitted to draw multiple reasonable inferences from
the evidence (direct or circumstantial), but they are not permitted to draw conclusions
based on speculation. Without concrete examples, it can be difficult to differentiate
between inferences and speculation, and between drawing multiple reasonable inferences
versus drawing a series of factually unsupported speculations. This hypothetical might
help clarify the difference. A woman is seen standing in an office holding a smoking gun. 
There is a body with a gunshot wound on the floor near her. Based on these two facts, it
is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still
smoking). Is it also reasonable to infer that she shot the person on the floor? To make
that determination, other factors must be taken into consideration. If she is the only
person in the room with a smoking gun, then it is reasonable to infer that she shot the
person on the floor. But, if there are other people with smoking guns in the room, absent
other evidence of her guilt, it is not reasonable to infer that she was the shooter. No
rational juror should find beyond a reasonable doubt that she was the shooter, rather than
any of the other people with smoking guns. To do so would require impermissible
speculation. But, what if there is also evidence that the other guns in the room are toy
guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a
toy gun was the shooter. It would also be reasonable to infer that the woman holding the
smoking gun was the shooter. This would require multiple inferences based upon the
same set of facts, but they are reasonable inferences when looking at the evidence. We
first have to infer that she shot the gun. This is a reasonable inference because she is
holding the gun, and it is still smoking. Next, we have to infer that she shot the person on
the floor. This inference is based in part on the original inference that she shot the gun,
but is also a reasonable inference drawn from the circumstances. 

 Inference stacking is not an improper reasoning process; it just adds unnecessary
confusion to the legal sufficiency review without adding any substance. Rather than
using the language of inference stacking, courts of appeals should adhere to the Jackson
standard and determine whether the necessary inferences are reasonable based upon the
combined and cumulative force of all the evidence when viewed in the light most
favorable to the verdict. 

Conclusion

 Because the court of appeals applied the legal sufficiency standard incorrectly, we
remand this case to the court of appeals to reconsider the legal sufficiency of the evidence
supporting Appellant's conviction and for any further proceedings consistent with this
opinion. 


 Meyers, J. 

Delivered: January 31, 2007

Publish

1. The dissenting opinion cited the following facts as those from which a jury could
rationally find Appellant guilty: Appellant was driving the getaway car. His driving was erratic
while he was being followed by law enforcement. He stopped before the officer pulled him over. 
Two other people were in the vehicle, concealed from view, and the front seat passenger exited
with gun in hand and shot at the officer.
2. The evidence at trial established that the front seat passenger was the shooter, and the
State acknowledged that Appellant was not the shooter. At trial, the State's theory of the case
was based on party liability.
3. To find Appellant guilty under the first theory of party liability, the jury must have
found beyond a reasonable doubt that: 1) acting with intent to promote or assist the commission
of the aggravated assault, 2) Appellant solicited, encouraged, directed, aided, or attempted to aid
the other person to commit the aggravated assault.
4. To find Appellant guilty under the second theory of party liability, the jury must have
found beyond a reasonable doubt: 1) Appellant and the co-conspirators engaged in an attempt to
carry out a conspiracy to commit aggravated robbery or another felony, 2) in that attempt, one of
the co-conspirators committed aggravated assault of a public servant, 3) the aggravated assault
was committed in furtherance of the aggravated robbery or other felony conspiracy, and 4) was
an offense that should have been anticipated as a result of carrying out the conspiracy. 

 
5. We mention presumption in addition to inference and speculation because courts have
used the terms presumption and inference interchangeably.