

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TIMOTHY OLIVER BROWN, | § | |
| | | No. 08-19-00074-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 109th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Crane County, Texas |
| | § | |
| Appellee. | | (TC# 1818) |
| | § | |

## **O P I N I O N**

A jury convicted Timothy Oliver Brown of possession of a controlled substance in penalty group 1, acquitted him of the charged offense of assault on a public servant, and pursuant to Brown's request for inclusion of a lesser-included offense to the assault, convicted him of the lesser-included offense of resisting arrest, search, or transportation. The jury assessed his punishment at 2 years' confinement and a $10,000 fine on the possession-of-a-controlled-substance conviction and at 365 days' confinement and a $4,000 fine on the resisting-arrest conviction. The trial court sentenced Brown in accordance with the jury's verdicts.

Under the above-styled appellate cause number, Brown asserts a single issue on appeal challenging the legal sufficiency of the evidence to sustain his conviction for resisting arrest,

search, or transportation only on the basis that the State failed to prove the requisite *mens rea* for his offense, i.e., that he intentionally resisted arrest. We affirm.[1]

BACKGROUND

On July 17, 2017, Lieutenant Aaron Jenkins of the Crane Police Department conducted a traffic stop of a truck due to the malfunctioning lights on a trailer being pulled behind it. The truck contained three occupants, and Brown was the front passenger. Upon approaching the truck, Lieutenant Jenkins saw a bat wedged in-between the front seat. Lieutenant Jenkins proceeded to identify the driver, and once he returned to his patrol unit to run the vehicle's information through a database, a dispatcher informed him that the trailer was reported stolen. At that point, Deputy Cesar Quiroga of the Crane County Sheriff's Office arrived to assist, and for officer safety, the two officers asked the occupants to exit the truck.

The driver and backseat passenger exited the vehicle, and the officers detained them without incident. However, Brown refused Deputy Quiroga's request for him to exit the passenger seat. When Deputy Quiroga saw the bat near the center console, Deputy Quiroga opened Brown's door and continued to ask Brown to exit. When Brown continued to refuse, Deputy Quiroga placed a handcuff on Brown's right wrist and began "helping him out." Brown's demeanor then became aggressive, "altered in manner," and noncompliant. Deputy Quiroga testified that, as he tried to handcuff Brown's other wrist, Brown "continued to resist" by "pulling away from the direction I'm trying to pull him to handcuff him." Brown finally relented once Deputy Quiroga warned him that he would be tased if he continued to resist.

---

[1] This is a companion case to Cause No. 08-19-00073-CR (TC# 1817) in which Brown appeals from his conviction for possession of a controlled substance in penalty group 1. We issue separate opinions for each case.

2

Yet, once Deputy Quiroga handcuffed Brown and began walking him over to a patrol unit, Brown resisted moving towards the patrol unit and tensed up. In addition, Deputy Quiroga testified that, when he finally brought Brown to the patrol unit and began to conduct a pat-down, Brown turned around and swung away from him, headbutting his jaw in the course of the motion. Lieutenant Jenkins then assisted in gaining control of Brown and bringing him back to the patrol unit. Nonetheless, Brown continued to resist, yell, and refuse to comply with the officers. After Deputy Quiroga warned Brown that he would use pepper spray if necessary, Brown again relented. The officers then conducted a pat-down on Brown, found a necklace with a "pill pocket" compartment containing methamphetamine, and found a knife. After taking custody of the necklace, Deputy Quiroga placed Brown in the back of his patrol vehicle. When asked about Brown's behavior while in the unit, Deputy Quiroga testified: "he kept on feigning, acting like he was dead. I kept on asking him to sit up, and he would just start laughing." After transporting Brown to the county jail and completing the steps for processing, Deputy Quiroga noticed he had more intense pain in his jaw area. Once he notified his supervisor of his situation, he went to a hospital to be checked out.

At trial, Lieutenant Jenkins testified that he heard a verbal confrontation between Brown and Deputy Quiroga in which Brown was being loud and noncooperative but did not see what occurred because his attention was focused on the driver of the truck. In addition, the driver of the truck testified at trial that he never saw Brown strike Deputy Quiroga.

## DISCUSSION

In one issue, Brown challenges the legal sufficiency of the evidence to sustain his conviction for resisting arrest, search, or transportation. He narrows this challenge to contending

only that there was no evidence he intentionally resisted and, specifically, that "it was an accident that [Brown] and [Deputy Quiroga] bumped heads and [Brown] did not use force to prevent [Deputy Quiroga] from searching [Brown]."

### 1. Standard of Review

In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the sole judge of the credibility of witness testimony and the weight to assign that testimony, and the jury may believe all, some, or none of any witness's testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). The reviewing Court must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id*. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id*.

### 2. Applicable Law

A person resists arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer[.]" TEX. PENAL CODE ANN. § 38.03(a). Applying a plain-meaning

4

approach to the word "force," the Court of Criminal Appeals explained that force requires some "violence, compulsion, or constraint exerted upon or against a person or thing." *Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. App. 2016). Further, the Court of Criminal Appeals defined "against" as "in opposition or hostility to;" "contrary to;" "directly opposite;" "in the direction of and into contact with;" or "in a direction opposite to the motion or course of." *Id*. In essence, "using force against the peace officer or another" means "violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another." *Id*.

Here, the only element at issue is whether Brown "intentionally" resisted an arrest, search, or transportation. By its nature, a culpable mental state must generally be inferred from the circumstances. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). We cannot read an accused's mind, and absent a confession, we must infer his mental state from his acts, words, and conduct. *Id*.

### 3. Application

In this case, Brown committed multiple, separate physical acts that could constitute resisting arrest, search, or transportation under *Finley*. *See Finley*, 484 S.W.3d at 928. Nonetheless, he circumscribes his legal-sufficiency challenge only to the singular act he committed when, during Deputy Quiroga's attempt to conduct a pat-down on him, he turned around, swung away from Deputy Quiroga, and headbutted Deputy Quiroga in the process. Even assuming that this singular act constitutes the only basis on which we could hold the evidence legally sufficient to sustain Brown's conviction, our analysis of that singular act would not change our resolution of this appeal, and we, too, will circumscribe our analysis accordingly.

5

From the beginning of Brown's interactions with Deputy Quiroga, Brown was noncompliant with Deputy Quiroga's requests and flatly refused them. Brown refused to exit the truck when asked to do so, and he pulled away from Deputy Quiroga once one handcuff was placed on his wrist. During this interaction, Brown's demeanor grew aggressive, "altered in manner," and noncompliant. Although Brown relented once he was threatened with a taser, he again became noncompliant when he resisted moving towards the patrol unit and tensed up. And, upon being patted down, Brown swung away from Deputy Quiroga and headbutted him. Even after the officers were able to place Brown in the patrol unit, where he kept on feigning, acting like he was dead, and started laughing when asked to sit up. All of these circumstances provided support for the jury to infer that Brown intended to resist Deputy Quiroga's pat-down when Brown decided to swing away with such reckless abandon that he headbutted Deputy Quiroga. *See Nisbett*, 552 S.W.3d at 267 (instructing that a culpable mental state must generally be inferred from acts, words, and conduct).

In his brief, Brown argues that his act in swinging away from Deputy Quiroga was an accident. Brown points to the lack of any testimony from a second witness to corroborate Deputy Quiroga's account where Lieutenant Jenkins testified that he did not see the headbutt and where the driver of the truck testified that he never saw Brown strike Deputy Quiroga. But even assuming that this constituted an evidentiary conflict, it is the province of the jury to fairly resolve conflicts in the testimony under our legal sufficiency standard of review. *See Hooper*, 214 S.W.3d at 13. The jury was free to believe Deputy Quiroga's testimony here. *See Metcalf*, 597 S.W.3d at 855.

Therefore, we hold that the evidence was legally sufficient to prove that Brown intentionally resisted Deputy Quiroga's search of him. We thus overrule his single issue presented

for review.

## CONCLUSION

The trial court's judgment is affirmed.


                                        GINA M. PALAFOX, Justice

August 19, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)