# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00436-CR

---

**Joshua Aaron Bishop, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 426TH DISTRICT COURT OF BELL COUNTY**
**NO. 78781, THE HONORABLE FANCY H. JEZEK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Joshua Aaron Bishop appeals his conviction for aggravated robbery with a deadly weapon, arguing that there is insufficient evidence that he committed the offense. *See* Tex. Penal Code § 29.03(a)(2). We will affirm.

## BACKGROUND

On February 12, 2018, at approximately 6 p.m., a Black male entered a Killeen convenience store known as "Mickie's" carrying a backpack and a sawed-off shot gun. His face was partly obscured by a mask printed with a white skull. Witnesses testified that he was between 5′7″ and 5′9″ and that he wore a dark shirt, khaki pants, and Converse tennis shoes. He demanded money from the cash register, which the two attendants provided.

The encounter was recorded by store cameras, and still images were provided to the Killeen Police Department. The images revealed that the man had pointed the shotgun at the two attendants and then made a menacing gesture before fleeing the scene.

The next day Officer Travis Akers of the Killeen Police Department was attempting to locate a stolen vehicle. Officer Akers later testified that when he attempted to stop the vehicle, it fled at speeds of up to 85 miles per hour in a residential area near schools. Officer Akers testified that he ultimately lost sight of the vehicle.

Fellow officer Matias Smith soon joined the chase. He explained:

> I was running school zones around the time frame when the incident started. Monitoring my radio, I heard Officer Akers get involved in a vehicle pursuit with a vehicle that had a stolen license plate attached to it. The location where he was pursuing the vehicle was actually in an active school zone at the time frame. Me being the on-call traffic investigator for that week, I was kind of concerned because, you know, it's a high-speed pursuit, [and] he was in a school zone. So I got onto the radio and advised the officer pursuing the vehicle, hey, just be careful, you're in a school zone.

He estimated that this occurred at "around three-ish," when children would be walking home from school.

Shortly thereafter, Officer Smith found the abandoned vehicle with both front doors open but no one inside. Officer Smith testified that he noticed that "there was a book bag in there that was black and had some white coloring on it, and then I also noticed some shotgun shells." He explained that these "were in plain view" and elaborated on the significance of the backpack:

> [I]t was the day prior or the two days before that, one of the CID detectives actually sent out an e-mail with a picture of the backpack that was involved in some robberies. So I was I like, man, it looks just like the backpack. So I went ahead and contacted CID and let them know what I -- what I found.

2

He also explained that the presence of the shotgun shells was significant because a sawed-off shotgun had been reportedly used in at least one of the robberies.

Security video from a nearby home revealed a White male leaving the vehicle's driver's seat and a Black male leaving the passenger side. The passenger was of medium build, wearing the same clothing seen in the robbery video. He was also carrying a sawed-off shotgun. The video revealed him running to a fence, throwing something over the fence, and then jumping to the far side of that fence.

The driver, meanwhile, entered a nearby residence. Officers called for back-up, and an eight-hour standoff ensued.[1] After the standoff ended with the driver placed under arrest, a passerby—wearing the same clothing seen in the robbery video and later revealed to be Bishop—approached Officer Zachary Bias to ask what had transpired. Officer Bias later testified that Bishop indicated that he lived in the neighborhood but that Bias became suspicious when Bishop seemed uncertain of which house he lived in and was unable to spell the name he used to identify himself. Officer Bias also noticed that Bishop matched the images of the passenger that had fled the vehicle.

After offering two false names to identify himself, Bishop was identified through fingerprinting and then arrested for failure to identify. Upon review of the videorecording of the aggravated robbery, and based on the recovery of the backpack, the mask, and the sawed-off shotgun, a detective read Bishop his *Miranda* rights. The detective then asked Bishop if the mask was his. Bishop denied it was his but refused to give a DNA sample to allow for testing. He conceded, however, that both backpacks from the car were his and that he had a shotgun that he had thrown away when he fled the car. And when a detective commented that no one had

---

[1] Bishop did not participate in the standoff.

been injured in the robbery, the appellant responded "Yes, I know." When shown the video from the convenience store, Bishop acknowledged that if a jury saw it, the jurors would find him guilty. During his time at the police department, Bishop drank from a cup that he then discarded but was recovered by officers. The driver was also interviewed as part of the investigation.

About a month later, a retired army veteran who lived near the fence the passenger had jumped over found a sawed-off shotgun hidden on his patio. He notified police, and officers recognized it as the shotgun depicted in the videorecording of the robbery.

The Department of Public Safety's laboratory obtained DNA profiles from the masks and the shotgun and compared those profiles to DNA profiles recovered from the disposable cups Bishop and the driver had discarded at the station. The DNA analyst testified that the test on the mask revealed DNA profiles consistent with Bishop, the driver, and an unknown third party. The shotgun had DNA profiles consistent with Bishop and the driver. Officers also recovered from social media a "selfie" of Bishop wearing the distinctive mask used in the robbery. While the attendants from the convenience store robbery could not definitely identify Bishop as the perpetrator, they were shown the shotgun, backpack, mask, and clothing and agreed they were "similar" to that worn and employed by the robber.

A grand jury indicted Bishop with the offense of aggravated robbery with a deadly weapon. The indictment also alleged that he had a prior conviction of the felony offense of aggravated assault on a public servant. The case was tried to jury, which found Bishop guilty. Bishop then entered a plea of "true" to the enhancement, and punishment was set by the trial court at 20 years in the Texas Department of Criminal Justice Institutional Division. Bishop filed timely notice of appeal.

4

In a single issue on appeal, Bishop contends, "There was insufficient evidence to convict Bishop of aggravated robbery with a deadly weapon because there was insufficient evidence to identify Bishop as the individual who committed the aggravated robbery." We disagree.

When reviewing a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307 (1979). The jury is the sole judge of the credibility of witnesses and the weight to be assigned to their testimonies, and we do not usurp this role by substituting our judgment for that of the jury. *See Brooks*, 323 S.W.3d at 899. When the record supports contradicting inferences, we presume the jury resolved any such conflicts in favor of the verdict. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

Bishop first argues, "The evidence is insufficient to identify Bishop as [the] Mickie's Convenience Store robber because the circumstantial evidence of his guilt relies on the stacking of speculative inferences." Yet the Court of Criminal Appeals has expressly eschewed inference-stacking analysis in conducting sufficiency review. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). The court explained:

> [I]nference stacking has not been used in this Court's sufficiency of the evidence jurisprudence in over 50 years. In the distant past, this Court reversed numerous convictions because they were based upon stacking inferences, unsupported presumptions, or building presumptions upon presumptions. *See, e.g.*, *Stallings v. State*, 158 Tex. Crim. 74, 77, 252 S.W.2d 939, 940 (1952); *Williamson v. State*,

5

> 156 Tex. Crim. 520, 522, 244 S.W.2d 202, 204 (1951); *Lee v. State*, 152 Tex. Crim. 401, 405, 214 S.W.2d 619, 622 (1948).  However, that practice was discontinued and is not a part of our modern sufficiency review.  We have used the *Jackson v. Virginia* test for legal[-]sufficiency review since it was enunciated by the U.S. Supreme Court in 1979.  *Jackson*, 443 U.S. 307 (1979).

Thus, the question is not whether inferences were "stacked," but whether any rational trier of fact could find beyond a reasonable doubt that Bishop committed the elements of the offense.

As applicable here, a person commits aggravated robbery if he commits robbery as defined in Section 29.02 and uses or exhibits a deadly weapon.  *See* Tex. Penal Code § 29.03(a)(2).  A firearm is a deadly weapon.  *See id*. § 1.07(a)(17).  A person commits robbery if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:  (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  *See id*. § 29.02(a).  A person commits theft as defined in Chapter 31 when he unlawfully appropriates property with the intent to deprive the owner of the property.  *Id*. § 31.03(a); *see also Graham v. State*, No. 14-18-00179-CR, 2019 WL 3132266, at *2 (Tex. App.—Houston [14th Dist.] July 16, 2019, no pet.) (mem. op., not designated for publication).

Bishop does not deny that the offense occurred; he instead argues that the State failed to prove that he was the perpetrator.  But identity can be proven by direct or circumstantial evidence.  *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).  In this case, surveillance video shows a man that resembles Bishop brandishing a sawed-off shotgun as he robs the store.  Law enforcement testified that it is highly unusual to encounter that type of firearm, yet Bishop was seen disposing of one the next day.  Bishop was also seen wearing the

6

same outfit depicted in the surveillance video and even posted photos of himself in the mask worn during the robbery. And while DNA analysts testified that both the driver and Bishop had handled the firearm and the face mask, the driver does not match the description of the perpetrator of the offense, and, regardless, it is within the province of the jury to resolve competing inferences, and we must assume the jury did so in a manner consistent with the verdict. *Queeman*, 520 S.W.3d at 622. Because a rational trier of fact could have concluded that Bishop committed the offense, we overrule his sole issue on appeal.

## CONCLUSION

We affirm the judgment of conviction.

 

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   June 24, 2021

Do Not Publish