**Affirmed and Memorandum Opinion filed May 4, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00921-CR

**PHILLIP ALVARADO JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1579245**

## M E M O R A N D U M   O P I N I O N

Appellant Phillip Alvarado, Jr. appeals his conviction for murder. A jury found appellant guilty, and after appellant pleaded true to an enhancement paragraph, the judge assessed punishment at 25 years in prison. In a single issue, appellant contends that the evidence is insufficient to support his conviction. We affirm.

## *Background*

On October 23, 2017, police officers responded to the scene of a shooting at a motel in Harris County. There they discovered complainant Danny Garcia lying lifeless on the walkway outside of a motel room. A woman, A.M., was near complainant with bloodstains on her shirt, "yelling and screaming and crying." An autopsy revealed that complainant died from a "gunshot wound of the torso." The bullet entered through his back and exited through his front.

A.M. testified that she was working as a prostitute at the time and complainant was helping her. On the night in question, they stopped at the motel because A.M.'s acquaintance, L.R. was staying there and A.M. needed to use the restroom. L.R. was sharing the room with appellant. A.M. went to L.R.'s room while complainant went to talk to a potential client for A.M. A.M. had been to the room a few times before to hang out and knew that Appellant used the room to bag methamphetamines and that L.R. was also working as a prostitute.

According to A.M., after she entered the room, complainant returned and knocked on the door to the room. Appellant opened the door and appellant and complainant began arguing. A.M. did not recall what they were arguing about. A.M. moved between the men and tried to grab complainant and thinks she may have slapped him once. She said she could tell that the two men were about to fight and she wanted to remove complainant and herself from the situation. L.R. began screaming and A.M. "went deaf." Appellant and L.R. then hurriedly left as complainant fell to the floor and A.M. began to administer CPR.

A.M. said that no one was in the room at the time except appellant, complainant, herself, and L.R. A.M. further explained that although she did not hear a gunshot, it must have been a gunshot that made her "go deaf." She was raised around guns and said that if a gun fires close to a person it will make them

2

go deaf. Appellant had been right behind A.M. during the whole brief encounter as she was trying to get complainant to leave. A.M. said that she did not see appellant with a gun before or after the shooting, but she had previously seen that he kept one in a drawer in the room. After complainant was shot, A.M. pulled him out of the room to wait for an ambulance with the help of someone from an adjacent room. Another bystander called 911.

A.M. admitted that she was not truthful with police officers when first questioned after the shooting, denying she knew complainant and telling the officers that she was using the restroom in a bush when she saw two Hispanic men shoot complainant. She explained her subterfuge by saying she was scared and in shock at the time and mad and hurt that complainant had died. A.M. acknowledged that she had had something to drink and had taken a Valium before the shooting. She also had charges pending against her at the time of her testimony, but she said she had been willing to testify and met with the prosecutor before those charges were filed.

In her testimony, L.R. corroborated that she had known A.M. for a short time and on October 23, 2017, A.M. came to the room L.R. was sharing with appellant to use the bathroom. L.R. said that only she and appellant were in the room at the time. While A.M. was in the bathroom, complainant began beating on the door. When appellant opened the door, complainant began "screaming belligerently," saying, "Just pop it, m— f—, just pop it." L.R. did not recall any physical confrontation or seeing A.M. become involved, but she said complainant made his way into the room, A.M. yelled, there was a loud gunshot, and complainant crumpled to the floor.

L.R. said that she has never carried a gun and did not have one on that day, and although she had seen a gun in A.M.'s purse before, that played no role in that

3

night's events. L.R. said that she knew appellant to have a gun that was readily available to him, although she professed she did not know where he kept it. After the shot was fired, appellant told L.R., "Get your s— and let's go." The two then left quickly with L.R. barefoot. L.R. said that before they left, she saw A.M. run to complainant and put her arms under his arms. A.M. said she was not going to call the cops. L.R. also said that she did not actually see appellant shoot complainant, but before they left, she saw a gun on the end of the bed. As they walked away from the motel room, appellant told L.R., "I'm sorry."

Video from a security camera that showed the outside of the motel room during the relevant time period was admitted into evidence. The video shows two people, identified by an officer as complainant and A.M., pull up to the room. A.M. goes to the motel room door, and after briefly joining her, complainant walks further down the walkway in front of the rooms. A male identified as appellant opens the door and admits A.M. A short time later, complainant comes back to the door, and when the door opens, he steps just inside. There appears to be a commotion at that point between complainant and A.M. A.M. appears to be holding or pushing complainant back, and he appears to be walking past her into the room. The door closes again, and a minute or so later, another man and another woman, identified as appellant and L.R., emerge and quickly walk away, with L.R. apparently barefooted. Several minutes later, A.M. emerges and pulls complainant out onto the walkway with the aid of a neighbor. Eventually, an EMS truck arrives on scene.

Other evidence demonstrated that appellant and L.R. had rented the room where the shooting occurred on consecutive nights, including the night of the shooting, and DNA likely belonging to appellant was recovered from a beer can found in the room. A recording of appellant's interview with police was played for

4

the jury in which appellant asserted he was with his girlfriend on the day in question but then admitted to being at the motel but leaving the girl that he was with there and driving away. Appellant also presented an alibi witness who testified that she was appellant's girlfriend and he was with her at the time of the shooting.

## *Discussion*

In his sole issue, appellant challenges the sufficiency of the evidence to support his conviction. In reviewing evidentiary sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. Each fact need not point directly and independently to appellant's guilt, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to sustain a conviction. *Id*. We examine events occurring before, during, and after the commission of the offense for incriminating evidence. *See id*.

We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the

5

testimony presented. *Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

Appellant was charged with murder under section 19.02(b) of the Texas Penal Code, which provides that "[a] person commits an offense if he: (1) intentionally or knowingly causes the death of an individual; [or] (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." Tex. Penal Code § 19.02(b). Appellant argues that the evidence was insufficient to prove he caused complainant's death; instead, appellant maintains that the evidence pointed to A.M. as the person who killed complainant.

In support of this assertion, appellant makes references to several pieces of evidence or inferences gleaned from the evidence, including (1) both A.M. and L.R. said that they did not actually see appellant shoot complainant; (2) A.M. pushed and may have slapped complainant shortly before he was shot; (3) L.R. saw a small gun in A.M.'s purse the day before the shooting; (4) complainant was either A.M.'s pimp or an angry client, which gave her a motive to shoot him; (5) A.M. stated that she was between appellant and complainant when a gun fired; and (6) L.R. testified that she saw a gun at the end of the bed before she and appellant left the room, suggesting that A.M. must have been the one to dispose of the weapon as no gun was found when the room was searched by police. Although these are all factors the jury could have considered in making its finding, they do not render the evidence insufficient.

As set forth above, although neither A.M. nor L.R. saw appellant shoot complainant, their testimony, which was corroborated to a degree by the security camera video, strongly supports the conclusion that he did. A.M. testified that appellant and complainant were in the middle of an altercation, with appellant

6

immediately behind her to the point where she could feel him and complainant in front of her to the point where she could touch him. A gun then fired in close proximity to her, causing her to "go deaf" and complainant to fall to the floor. L.R. described the scene similarly and said immediately before the gunshot, complainant yelled at appellant, "Just pop it, m— f—, just pop it." Both women testified that they knew appellant to have a gun close at hand. Also, according to both women, appellant left the scene immediately after the shooting, and L.R. said that he told her "I'm sorry" as they walked away from the motel room.

A.M. explained that she was pushing complainant and may have slapped him in her attempts to get complainant to leave a volatile situation. Although L.R. noted that she had seen a small gun in A.M.'s purse the day before the shooting, she also averred that that gun played no role in the shooting. As judge of the weight and credibility of witness testimony, the jury was free to believe this testimony. *See Cain*, 958 S.W.2d at 407 n.5. Also, the fact that L.R. saw a gun at the end of the bed before she left the room does not necessarily indicate that A.M. disposed of the gun or was the shooter. L.R. did not state or suggest that A.M. took the gun or shot complainant, and nothing in the record suggests that appellant could not have taken the weapon with him when he left. The fact that A.M. was reportedly between appellant and complainant does not mean that appellant could not have shot complainant.

As stated, although the jury could have considered the points appellant raises, these arguments do not establish that A.M. shot complainant or otherwise render the evidence insufficient. *See Whatley*, 445 S.W.3d at 166; *Hooper*, 214 S.W.3d at 13. Accordingly, we overrule appellant's sole issue.

7

We affirm the trial court's judgment.


/s/    Frances Bourliot
Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).