**Affirm and Opinion Filed August 26, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00680-CR**

**JUSTIN LATODD CASSELBERRY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Hunt County, Texas**
**Trial Court Cause No. CR2100461**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

In this appeal from a jury trial, appellant Justin Latodd Casselberry complains in a single issue that there is no evidence to support his conviction for driving while intoxicated. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### Standard of Review

In reviewing the sufficiency of the evidence under the standard set forth by the Supreme Court in *Jackson v. Virginia*, we determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Witcher v. State*, 638 S.W.3d 707, 710–11 (Tex. Crim. App. 2022). This standard accords with the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see Witcher*, 638 S.W.3d at 710. A jury is permitted to draw "reasonable inferences" from the evidence but may not come to conclusions "based on mere speculation." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). The evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination. *Temple v. State,* 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

*DWI*

A person commits the offense of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a). "Intoxicated means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a

dangerous drug, a combination of two or more of those substances, or any other substance into the body . . . ." *Id*. § 49.01(2)(A).

*Background*

Officer Mason Brandenburgh of the Greenville, Texas, Police Department testified he was dispatched to the intersection of Sayle Street and Robin Road on June 8, 2020, to conduct a welfare check. Dispatch had advised Brandenburgh of a male in the middle of the road. When Brandenburgh arrived, he observed a red car in the middle of the road, stopped at a stop sign, with other cars having to pull around it. Brandenburgh identified appellant as the driver of the stopped car. Brandenburgh began to initiate a traffic stop and approached appellant's vehicle. Once appellant saw Brandenburgh approach, appellant turned his vehicle right—without signaling—onto Robin Road. Brandenburgh followed appellant and initiated a traffic stop and again approached appellant's vehicle. Before Brandenburgh turned his car's lights on, appellant stopped his vehicle in the middle of the road, which Brandenburgh described as very uncommon. Most drivers wait until a police car's lights are activated and then pull their vehicles to the right.

Brandenburgh pulled his car behind appellant's car. Brandenburgh observed that appellant's car was still in drive and was still running. Brandenburgh asked appellant to put his car into park. Brandenburgh testified appellant's hands were very rigid on the steering wheel. Appellant's speech was slurred and muffled. "I couldn't really understand what he was saying very much," Brandenburgh testified. Appellant

–3–

looked straight ahead and with a blank stare. Appellant's eyes appeared glassy, bloodshot, red, pink, and watery. Brandenburgh asked appellant several times to put appellant's car in park. To this, appellant replied, "The car is in park." Brandenburgh could see otherwise on the car's dashboard. After this delayed reaction to Brandenburgh's directives, appellant put his car in park.

Brandenburgh testified that when he asked appellant to get out of the vehicle, appellant said, "I'm already out of the vehicle." Brandenburgh testified that it was quite a while before appellant complied and got out of his car. Brandenburgh testified that appellant's actions were abnormal, and Brandenburgh requested backup. Appellant eventually exited his vehicle. Appellant appeared very lethargic. He stood almost exactly where he had gotten out of his car and did not move his stance. His gaze was abnormal. His speech was muffled and hard to hear. His movements were impaired. Brandenburgh thought these actions also were abnormal and decided to investigate whether there might be a possibility that appellant was intoxicated.

Brandenburgh testified that he initiated a field sobriety test—the horizontal gaze nystagmus test.[1] He instructed appellant how to take the test, but appellant did not comply. Brandenburgh instructed appellant to follow whatever stimulus is

---

[1] Brandenburg described the test: "So the HGN, as it's referred to, it's an eye test initially, that whenever a stimulus is held in front of someone's eyes and it's stressed to either the left side or the right side, their eyes will involuntarily bounce, which would indicated [sic] intoxication."

–4–

placed in front of appellant's eyes with his eyes only and to keep his head still. But appellee constantly turned his head. Officer Brandenburgh found it impossible to conduct the test correctly. He considered appellant's refusal to follow instructions a sign of intoxication. Brandenburgh attempted to conduct a second field sobriety test, the walk-and-turn test, but appellant did not follow Brandenburgh's instructions. Appellant said he already had done the test. Brandenburgh testified appellee basically refused the walk-and-turn test. Brandenburgh took this also as a sign of intoxication. Brandenburgh testified that two refusals is probable cause to make an arrest for driving while intoxicated.

Brandenburgh testified that at that point, based on everything he had observed, his training, and his experience, appellant had lost the normal use of his mental faculties. Brandenburgh thought the source of intoxication was narcotics. Brandenburgh did not detect the odor of alcohol inside appellant's car or see open alcohol containers. Brandenburgh then arrested appellant for driving while intoxicated.

Police took appellant to a hospital and attempted to read him "warnings" from a "DIC-24" form concerning breath or blood samples.[2] When Brandenburgh read from the form, appellant constantly referred to himself in the third person, which

---

[2] Brandenburgh testified about the DIC-24 form, "It's a statutory warning that basically informs whoever is being read the warning of their rights as far as giving a breath or blood sample, and there are consequences for not giving the sample" and agreed the form provided that appellant's refusal could be used as evidence against him.

Brandenburgh thought to be abnormal. Appellant was very defensive and constantly interrupting Brandenburgh toward the end of Brandenburgh's reading the form. Brandenburgh testified that most persons usually sit, observe, listen, and want to read the warnings while he reads them aloud. Appellant never signed a document for a blood test. Appellant said he would consent to a breath test. Brandenburgh testified that a breath test can detect alcohol but not drugs; blood tests, however, detect alcohol and drugs. Brandenburgh testified it was not normal for a person to keep demanding a breath test. Brandenburgh considers refusal of a blood test but not of a breath test as a sign of intoxication by drugs. Brandenburgh took appellant to Hunt County Jail. Brandenburgh obtained a search warrant from a judge to obtain a blood sample from appellant.

On June 6, 2020, Greenville Police Officer Eric Guzman arrived to back up Brandenburgh near Sayle Street and Robin Road. Guzman testified that he first noticed a car stopped in the middle of the road, which he did not consider to be normal. Appellant appeared very confused and had trouble focusing. Appellant was unresponsive to questions, which had to be repeated multiple times. Appellant was not understanding anything. Appellant's responses to questions were confused. Appellant's speech was a bit slurred, and he was confused by questions. Appellant was "in and out." Appellant was a little bit off balance. Guzman confirmed Brandenburgh's account that appellant could not successfully complete the two field sobriety tests. Ultimately, appellant refused to continue with field sobriety testing.

Appellant could not "get past" the instructions of the walk-and-turn test. Appellant continued to state he already had taken the test. Appellant was not able to hold the first position correctly in the walk-and-turn test. Appellant placed his right foot in front of his left foot and then lost balance. Appellant ultimately refused to complete the test, insisting he had completed it.

Guzman testified, based on his training, experience, and observation at the scene that appellant had lost the normal use of his mental faculties. Guzman did not detect evidence of alcohol. He also believed intoxication was due to drugs.

Guzman agreed with appellant's arrest for driving while intoxicated. Appellant was taken to the hospital and given his DIC-24 information. Appellant stated he would give a breath sample but not a blood sample, which is not normal: usually persons refuse both. Guzman testified that appellant's asking for a breath test but not a blood test raised a suspicion that drugs, rather than alcohol, might be detected. Brandenburgh then took appellant to Hunt County Jail and obtained a warrant to test appellant's blood.

Dana Baxter, a forensic scientist with the Texas Department of Public Safety, testified that she tested appellant's blood sample. She tests biological specimens for presence or absence of drugs, prepares written reports based on analytical results, is custodian of business records, maintains a chain of custody for evidentiary purposes, performs routine maintenance of instruments, and testifies in court. Her tests revealed that appellant's blood sample contained PCP or phencyclidine in an amount

that could cause impairment. PCP is a dissociative anesthetic that interferes with sight, perception, and sometimes auditory function. It makes persons feel that things are not really happening—more as if they are witnessing an occurrence on television. A side effect is that muscles become very rigid. Another side effect is that although one's eyes are open, the person clearly might not see what is happening in front of him or her. Another side effect is slowed reaction time.

State Trooper Amanda Russ testified as a drug-recognition expert. She had completed several training courses and had law-enforcement experience with intoxicated persons. Sergeant Russ testified that indicators of PCP use include a blank stare, with persons looking through, not at, things; rigid muscle tone; very rigid movements; walking as if stepping over something when there is nothing to step over; using incomplete sentences; not responding to others' speech; and confusion.

Sergeant Russ testified she could evaluate a person's intoxication although she is not in the person's presence. She based her evaluation of appellant on a video recording of appellant's conduct, police reports, and appellant's blood analysis. Sergeant Russ noted appellant's speech with the contacting officer was slow, confused, and slurring. When appellant was removed from the vehicle, he had to be told several times to put the car in park and did not realize it was not in park. She noted that police told appellant to relax, but that appellant was not intentionally being rigid: "It's just what the PCP does when you're under the influence." Appellant

could not follow directions and appeared to be confused. Appellant had a blank stare and appeared to be looking through the officers. Appellant took very large steps. Appellant's conduct evidenced the overall confusion of PCP use. Sergeant Russ concluded that appellant lost the normal use of his mental and physical faculties."

*Discussion*

Appellant mainly contends:

> In the case at bar, the State did not sufficiently demonstrate that Appellant did not have the normal use of mental and physical faculties by reason of the introduction [sic] controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. Specifically, a rational trier of fact could not have found that the State proved beyond a reasonable doubt the essential element of intoxication.

Appellant also asserts the jury could only have drawn conclusions on "the conclusory and speculative evidence presented by each expert and officer to find appellant guilty."

Based on the testimony reviewed above, we reject appellant's contentions. First, Brandenburgh witnessed appellant operating a motor vehicle in a public place. Second, appellant's blood sample tested positive for PCP in an amount that could cause impairment. Third, Baxter and Russ provided consistent testimony about various side effects of PCP. Fourth, Brandenburgh, Guzman, and Russ observed appellant's conduct, which was consistent with that of a person experiencing various side effects of PCP identified in the testimony of Baxter and Russ. Fifth, Brandenburgh and Guzman concluded appellee was intoxicated due to a narcotic;

–9–

Russ concluded appellee was intoxicated with PCP. Sixth, Brandenburgh and Guzman testified that appellant had lost the normal use of his mental faculties and provided other testimony raising a reasonable inference of a loss of physical faculties; Russ testified appellant had lost the normal use of his mental and physical faculties. *See Wise*, 364 S.W.3d at 903 (noting the evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict.").

*Conclusion*

We overrule appellant's single issue and affirm the trial court's judgment.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

210680f.u05
Do Not Publish
Tex. R. App. P. 47

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUSTIN LATODD
CASSELBERRY, Appellant

No. 05-21-00680-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at
Law No. 2, Hunt County, Texas
Trial Court Cause No. CR2100461.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 26th day of August, 2022.