

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DANIEL ESQUIVEL, | § | No. 08-23-00155-CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Crane County, Texas |
| Appellee. | § | (TC# 1996) |

## MEMORANDUM OPINION

A jury found appellant, Daniel Esquivel, guilty of assault on a peace officer and assessed punishment at seven years' confinement. In a single issue on appeal, appellant asserts the evidence is legally insufficient to support his conviction. We conclude the evidence is legally sufficient; therefore, we affirm.

## FACTUAL BACKGROUND

On the day of the assault, Sonny Williams, a patrol officer with the City of Crane Police Department, was dispatched to Crane Memorial Hospital regarding an individual—later identified as appellant—who was acting aggressively towards the hospital staff. Williams asked appellant to leave the hospital, and appellant complied.

A few hours later that same day, Williams encountered appellant for a second time when he was dispatched on a call regarding a male who was "acting really odd." When Williams found appellant, appellant was crying and appeared unstable. Williams called EMS, which transported appellant to Crane Memorial Hospital. Appellant refused to allow the hospital staff to draw blood and he refused medical treatment. Williams, who had followed appellant to the hospital, approached appellant, told appellant he was going to arrest him for public intoxication, and eventually appellant allowed himself to be handcuffed. Appellant was then taken to the Crane County Sheriff's Office jail.

After appellant was placed in a jail cell, Williams went to what he referred to as a "jailer's office" to complete the booking paperwork. After completing the paperwork, Williams went back to the cell in which appellant had been placed because Williams needed appellant to sign the paperwork. When Williams saw that appellant had wrapped a bed sheet around the cell door to keep anyone from entering, he called other jailers for assistance. Williams eventually left the jail to return to the police department.

The third encounter between Williams and appellant occurred later that day. While Williams was at the police department, he heard a "tone out page" over his radio that the jail "needed all officers on deck." He described the page as a dispatch "to everyone that works for the county, they have an alarm button they can push if they're distressed." Williams drove back to the jail, ran inside, and went to the second floor of the jail where appellant was being kept. Although he was not able to immediately enter the second floor due to certain jail protocols, Williams could see appellant on the ground screaming while two inmates[1] and other jailers tried to hold appellant

---

[1] Crane County Sheriff Andrew Aguilar testified "working inmates" are told that when there is an incident at the jail, they are to help the officers as needed.

2

down. When one of the jailers allowed Williams entry onto the second floor, Williams assisted in holding appellant down until he could be restrained. When Williams tried to hold appellant's legs, appellant kicked him twice, once in the upper groin area and once in the thigh. Williams crossed appellant's legs and pushed them to appellant's back to prevent appellant from continuing to kick. Williams testified he wore his police uniform throughout the entire day.

Appellant, who testified on his own behalf, admitted he tried to tie a sheet against the bars of his cell, and three inmates who had been called by the jailers came to his cell and unlocked the door. When the inmates entered his cell, he "swung" at one of them. He stated the only acts of aggression he could admit to were hitting an innate and biting a person's hand. However, he admitted he "recklessly" kicked Williams, but it was not his intent to kick him or cause him bodily injury or pain. When asked if he turned and looked at Williams and then kicked him, appellant responded that Williams had just pulled his pants down and he was compliant with Williams.

### APPLICABLE LAW & STANDARD OF REVIEW

Appellant was convicted of the second-degree felony of assault on a police officer, which requires proof that (1) the defendant "intentionally, knowingly, or recklessly cause[d] bodily injury to another" person, (2) the defendant knew the person was a peace officer, and (3) the officer was lawfully discharging an official duty. TEX. PENAL CODE ANN § 22.01(a)(1), (b)(2).[2] Appellant contends the evidence is legally insufficient to support jury findings that he knew the person whom he kicked was a peace officer or that Williams was lawfully discharging an official duty at the time of the assault.

---

[2] The indictment alleged appellant did "then and there intentionally, knowingly or recklessly cause bodily injury to another, Sonny Williams, by kicking him, and the defendant did then and there know that the said Sonny Williams was then and there a public servant, to-wit: a peace officer for the Crane Police Department, and that Sonny Williams was then and there lawfully discharging an official duty, to wit, attempting to restrain the defendant [.] . . ."

3

"In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the trier of fact to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 13–14 (holding, "[j]uries are permitted to make reasonable inferences from the evidence presented at trial").

"In reviewing the sufficiency of the evidence, we should look at events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Id.* at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Id.*

## ANALYSIS

On appeal, appellant does not dispute he kicked Williams. Instead, he asserts that, at the time, he did not know Williams was a peace officer and Williams was not lawfully discharging an official duty.

### A. Appellant's knowledge that Williams was a Peace Officer

Appellant contends the evidence shows he thought he was kicking an inmate and not a peace officer. We disagree.

4

The evidence shows Williams, who at all times was wearing his police uniform, had three interactions with appellant on the day of the incident. Appellant did not dispute he was looking at Williams when he kicked him and nothing in the record supports appellant's contention that he thought he was kicking another inmate. We conclude the evidence is legally sufficient to support a jury inference that appellant knew he was kicking a peace officer.

**B.    Was Williams lawfully discharging an official duty**

Appellant also asserts Williams was not discharging an official duty when appellant kicked him. Appellant contends there is no evidence Williams was a jailer for Crane County when appellant was in the jail, and Williams' official duties ended when Williams left the jail and returned to the police department before the incident that led to the kicking occurred. Therefore, according to appellant, Williams was not acting within his capacity as a peace officer, and he was only a citizen who voluntarily returned to the jail and had no right to be inside the jail.

If an officer is acting within his capacity as a peace officer, he is acting within the lawful discharge of his official duties. *Guerra v. State*, 771 S.W.2d 453, 461 (Tex. Crim. App. 1988) (en banc); *see also Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (footnote omitted) ("Furthermore, the phrase lawful discharge of an official duty is not statutorily defined, but it does have an ordinary meaning that jurors can apply using their own common sense: The person killed was a police officer who was, at the time of his death, lawfully acting as a police officer."). In determining whether an officer is acting within his capacity as a peace officer, we look to the details of the encounter, such as whether the police officer was in uniform, on duty, and whether he was on regular patrol at the time of the assault. *See Hughes v. State*, 897 S.W.2d 285, 298 (Tex. Crim. App. 1994) (record reflected officer was "acting within his capacity as a peace officer"

at the time of the offense . . . "[h]e was on duty, in uniform and patrolling Interstate 10 with his partner when they heard and responded to the dispatcher's report").

Here, appellant does not dispute that Williams was wearing his police uniform or that he was on duty at the time of the incident. The fact that Williams was not a jailer at the county jail is not determinative of whether he was acting within the discharge of his official duty as a peace officer. *See Guerra*, 771 S.W.2d at 461 (holding, "the determination of whether the officer was engaged in making a valid arrest at the time of his death is not necessary to the resolution of whether the officer was acting within the lawful discharge of his official duties"). Williams went to the jail to provide assistance in response to a dispatch sent "to everyone that works for the county," which indicated an alarm had been activated at the jail. We conclude the evidence is legally sufficient to support a jury inference that Williams was acting within his capacity as a peace officer; therefore, he was acting within the lawful discharge of his official duties.

## CONCLUSION

For the reasons stated above, we overrule appellant's issue on appeal and affirm the trial court's judgment.

SANDEE B. MARION, Chief Justice (Ret.)

November 10, 2023

Before Palafox, J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

Do Not Publish